George J. LYON and Lloyd J.
Farrer, Appellees,

v.

B. V. WILLIE, Appellant, and Spencer
Community Antenna System,
Inc., Appellee.

B. V. WILLIE, Appellant,

v.

George J. LYON, Lloyd J. Farrer and
Spencer Community Antenna System,
Inc., Appellees.

No. 62313.

Supreme Court of Iowa.

Feb. 20, 1980.

Robert F. Wilson, Cedar Rapids, and Robert W. Sackett, Spencer, for appellant.

Leo E. Fitzgibbons and Harold W. White of Fitzgibbons Brothers, Estherville, for appellees.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, ALLBEE and McGIVERIN, JJ.

McCORMICK, Justice.

This appeal concerns a right of first refusal in a buy-sell agreement among the stockholders of defendant Spencer Community Antenna System, Inc. Plaintiffs George J. Lyon and Lloyd J. Farrer and defendant B. V. Willie are the sole stockholders. Plaintiffs each own fifty shares of stock in the corporation, and Willie owns one hundred shares. As authorized in the buy-sell agreement, plaintiffs negotiated a sale of all the stock subject to Willie's option to buy plaintiffs' interests on the same terms. Willie purported to exercise his option, but plaintiffs contended he did not do so. They brought this action against him and the corporation, in one count seeking to require defendants to transfer the stock to carry out the negotiated sale, and in a second count seeking damages from Willie for alleged breach of the buy-sell agreement. Willie cross-petitioned[1] against Lyon, Farrer and the corporation, seeking specific performance in accordance with the buy-sell agreement and other relief. Both sides moved for summary judgment on their claims for specific performance. The trial court overruled Willie's motion but sustained plaintiffs' motion for summary judgment on the first count, reserved the second count for trial, and dismissed Willie's cross-petition. Willie appealed. We reverse and remand.

Four main questions are presented: first, whether the summary judgment was final for appeal purposes; second, whether the trial court erred in interpreting the terms of the first refusal option in the buy-sell agreement; third, whether the court erred in refusing to hold that Willie was excused from making a tender because plaintiffs repudiated the buy-sell agreement; and, fourth, whether Willie was entitled to summary judgment on the count of his cross-petition seeking specific performance.

*I. The finality of the judgment.* The first question is one of subject matter jurisdiction. In entering summary judgment for plaintiffs on one count of their petition, the court ordered Willie to deliver his stock to the corporation for transfer to the purchaser. Willie's motion for summary judgment was overruled, and his cross-petition was dismissed. Yet, the case was not fully put out of court because the damages count of plaintiffs' petition was reserved for trial. Because defendant did not obtain permission to appeal, we do not have jurisdiction unless the judgment was final within the meaning of Iowa R.App.P. 1.

The general principles which govern the determination of finality are delineated in *Shoemaker v. City of Muscatine,* 275 N.W.2d 206, 208 (Iowa 1979). Ordinarily a final judgment conclusively adjudicates all the rights of the parties. Such an adjudication puts it beyond the power of the court to place the parties in their original positions.

However, it is possible for an order to put it beyond the power of the court to return the parties to their original positions even though it does not conclusively adjudicate all the rights of the parties. The present case is an example. The judgment requires Willie to turn his stock over so the transfer to plaintiffs' purchaser can be carried out. If this judgment were carried out, the court would lack authority, without a new law-

---

1. Even though we adopt this terminology, Willie's claim against Lyon and Farrer was actually a counterclaim under Iowa R.Civ.P. 29, whereas his claim against the corporation was a cross-claim under rule 33.

suit, to order the purchaser to return the stock. Nonetheless, the judgment did not adjudicate all the rights of the parties because the damages count remained for trial.

▮▮▮ In this situation, the requirement of full adjudication gives way. Two final orders are possible in a single case, one putting it beyond the power of the court to put the parties in their original positions in relation to a specific issue, and the other adjudicating remaining issues in the case. *Johnson v. Johnson*, 188 N.W.2d 288, 293 (Iowa 1971) ("In this case the order to pay a large part of plaintiff's funds to the bank would put the payment beyond the power of the court to restore the parties to their original position (at least absent a new lawsuit). . . . We therefore regard that portion of the order as final and appealable as a matter of right."); *see Forgay v. Conrad*, 47 U.S. (6 How.) 201, 204, 12 L.Ed. 404, 406 (1848); *Gazin v. Hieber*, 8 Wash.App. 104, 113–14, 504 P.2d 1178, 1184–85 (1972).

Because the present case comes within these principles, we hold that the partial summary judgment was final for purposes of appeal. Therefore we have jurisdiction.

*II. The terms of the first refusal options.* The buy-sell agreement, which was entered into by the stockholders on March 11, 1974, provided in relevant part:

It is agreed by and between the parties hereto that from and after the date of June 1, 1975, any party to this Agreement may negotiate a sale of all of the issued and outstanding shares of stock of Spencer Community Antenna System, Inc., subject to the right of first refusal, hereinafter set forth to any individual, partnership or corporation; said negotiated sale must be bona fide and shall be in writing and may be for any amount, but must be payable in cash at the time of the delivery of the stock, which delivery must be not later than one hundred and twenty (120) days after the date of Notice and the purchase price may not be payable in installments. For the purposes of this Agreement, the shares of Lloyd J. Farrer and George J. Lyon shall be treated as a unit and as one party and the shares of B.

V. Willie shall be treated as a unit and as one party. The party negotiating the sale shall submit a true copy of the proposed sale to the other party not negotiating the sale and the party not negotiating the sale shall have the first option to buy the interest of the other fifty percent (50%) proposing to sell at a price based upon the price the negotiating party would be receiving for his one-half interest in the corporation from the outside purchaser. *The party desiring to exercise this first right to buy referred to above shall notify the negotiating party in writing within sixty (60) days from the date of Notice and by making full payment in cash of the above purchase price within one hundred twenty (120) days from the date the written Notice of the negotiated sale is mailed to or delivered in person to the party or parties not negotiating the sale and if said party or parties fail to exercise the option, then all stockholders shall endorse their stock and deliver said stock to the Security Savings Bank of Eagle Grove, Iowa, on the part of B. V. Willie and The First National Bank of Mason City, Iowa, on the part of Lloyd J. Farrer and George J. Lyon;* said banks to act as escrow agents. The party negotiating the sale may then sell all of the stock of the corporation at the price and on the terms as proposed. It is further agreed that on delivery of stock and payment thereof, all payments due the stockholders under paragraph four (4) of this Agreement shall be paid to the stockholders forthwith as their interests appear. (emphasis supplied).

The parties do not agree on what must be done to exercise the first refusal option. Plaintiffs contend and the trial court agreed that it is necessary to serve notice within sixty days and tender full payment in cash within 120 days of the negotiated sale. Willie contends the option is exercised by the serving of notice alone and asserts payment is merely a condition subsequent in a contract which becomes executory when notice of exercise of the right of first refusal is given.

■ This dispute presents a problem of contract interpretation, the meaning of its language. In this case neither party offered extrinsic evidence bearing on the meaning of the option. Therefore the trial court's interpretation is reviewed as a determination of law. *Connie's Construction Co. v. Fireman's Fund Insurance Co.*, 227 N.W.2d 207, 210 (Iowa 1975). This also means no problem is presented as to whether summary judgment was precluded because of existence of a genuine issue of fact regarding the meaning of the option language.

■ The applicable rule for determining what must be done to exercise an option is the same as the general rule governing interpretation of contracts. The intent of the parties controls:

The only fixed rule regarding the manner of the exercise of an option under a contract granting it, is to discover from the language of the instrument, construed in the light of competent parol testimony, the intent of the parties with reference thereto. It may be that under the terms of a given option the only proper and binding method of election or acceptance is by the payment or a tender of the purchase price. On the other hand, there are many cases where the option may be exercised in parol or by any other method indicating an election to take the land—the payment of the purchase price and the making of the deed being subsequent matters in the performance of a binding contract. In the one case, there is an election to sell, upon payment of the purchase price, which is a condition precedent to the foundation of the contract; and in the other there is an election to take the land upon the terms proposed, payment of the purchase price being a condition subsequent, or rather the performance of an executory contract theretofore entered into.

It is important in such cases to distinguish that which pertains to the performance of a contract from that which pertains to its making. To make any sort of a contract, there must be a meeting of the minds upon a given subject. An offer without acceptance is not a contract, and as a rule the acceptance to be binding must be in accord with the terms of the offer, and not in some other manner. In other words, the party making the offer may prescribe the mode of acceptance, and to constitute a binding contract this method must be followed.

*Breen v. Mayne*, 141 Iowa 399, 403–04, 118 N.W. 441, 443 (1909); accord *Figge v. Clark*, 174 N.W.2d 432, 435 (Iowa 1970); *Janssen v. North Iowa Conference Pensions, Inc.*, 166 N.W.2d 901, 903–04 (Iowa 1969); *Steele v. Northup*, 259 Iowa 443, 449, 143 N.W.2d 302, 305 (1966). *See generally* 77 Am.Jur.2d *Vendor and Purchaser* § 40, at 220 (1975); Annot., 71 A.L.R.3d 1201, 1209, 1213–14 (1976); 91 C.J.S. *Vendor and Purchaser* § 10(a), at 852–53 (1955).

■ When an option requires tender of payment, it is not exercised unless payment is tendered before the option expires. *Lockman v. Anderson*, 116 Iowa 236, 239, 89 N.W. 1072, 1073 (1902).

■ In the present case, we agree with the trial court's interpretation of the option clause. The clause requires the party exercising the option to "notify the negotiating party in writing within sixty days from the date of Notice and by making full payment in cash of the . . . purchase price within one hundred twenty (120) days from the date the written Notice of the negotiated sale is mailed to or delivered in person to the party or parties not negotiating the sale," and continues "and if said party or parties fail to exercise the option" the negotiated outside sale would be carried out. The only confusion is grammatical. The clause provides the optionee "shall notify" the other party within sixty days but then adds "and by making full payment in cash" within 120 days, instead of using parallel language such as "and shall make full payment in cash" within 120 days. This grammatical defect does not obscure the significance of the use of the conjunctive "and" joining the two requirements, nor does it detract from the fact both requirements immediately precede "if said party or par-

ties fail to exercise the option." These factors clearly show that timely notice and tender of payment are both necessary for exercise of the option.

The trial court was right in so holding.

*III. Excuse of the requirement of tender.* On February 25, 1977, plaintiffs provided Willie with a notice of negotiated sale pursuant to the buy-sell agreement. In the body of the notice they stated:

You are hereby notified that the undersigned have negotiated a sale of all of the stock of Spencer Community Antenna System, Inc. to John J. Greer and other undisclosed Partner Buyers and you will find herewith a true copy of said negotiated sale.

This notice is given as required under the provisions of Paragraph 13 of an agreement of March 11, 1974.

The attached sales agreement was as follows:

This Agreement is made and entered into this 25th day of February, 1977, by and between Lloyd J. Farrer and George J. Lyon, SELLERS, pursuant to the terms of an Agreement dated March 11, 1974, among all of the stockholders of Spencer Community Antenna System, Inc., and John J. Greer, for and on behalf of himself and other undisclosed partners, BUYER.

WITNESSETH:

Sellers agree to sell and Buyer agrees to buy all of the outstanding capital stock of Spencer Community Antenna System, Inc., which stock is owned by Lloyd J. Farrer, George J. Lyon, and B. V. Willie, all according to the following terms and conditions:

1. The total sale price shall be the sum of One Million Dollars ($1,000,-000.00), payable Twenty-five Thousand Dollars ($25,000.00) herewith and the balance in cash on delivery of said corporate stock pursuant to the terms and provisions of Paragraph 13 of the March 11, 1974, Agreement referred to above.

2. Said March 11, 1974, Agreement contains a buy-sell arrangement among the present stockholders. This sale is being made pursuant to the terms of said buy-sell arrangement and the parties hereto agree that this sale is subject to each and every provision and condition set forth in said March 11, 1974, Agreement.

3. The within sale is a sale of capital stock. Accordingly, all assets owned and held by the corporation on the date that said corporate stock is transferred shall remain as corporate assets. Sellers warrant no specific amount of cash on hand or in the bank accounts on such date, nor do Sellers warrant any specific amount for accounts receivable except that said accounts receivable will not be removed from the corporation by the Sellers. It is, however, understood and agreed that any prepaid subscriptions paid to the corporation for service for and after the date of the within sale shall be prorated to said date of sale and said prorated amount shall be paid back by Sellers in cash to the corporation. It is further understood and agreed that all assets comprising the fixed asset account grouping on the corporation's balance sheet shall be retained and will be owned and on hand at the date that the corporate stock is transferred to Buyer. It is further understood and agreed that all accrued and/or listed liabilities of the corporation on the date the capital stock is transferred shall be paid or provided for by Sellers and further, Sellers agree to hold Spencer Community Antenna System, Inc., and Buyer harmless for any and all liabilities of the corporation whatsoever as of the date that the capital stock is transferred.

4. Sellers warrant that there have been no notices of any infractions or violations of Federal Communication Commission regulations or rules up to the date that the capital stock is transferred hereunder.

5. Sellers warrant that the capital stock being transferred hereunder is owned by each stockholder free and clear of any and all liens whatsoever up to the date that the capital stock is transferred hereunder. Sellers agree to indemnify

and hold Buyer harmless for any federal or state income taxes due from the corporation or by the individual stockholders for the corporation's tax year ending May 31, 1976, and prior thereto.

6. Up to the date of final closing, Sellers agree to continue in force all existing policies of property and casualty insurance.

7. Sellers agree to retain all present employees up to the date of closing.

8. Sellers warrant that there is no broker's commission and/or finder's fee due by reason of this sale and Sellers agree to hold Buyer harmless for any broker's commission and/or finder's fee that otherwise may be subsequently claimed.

> /s/ Lloyd J. Farrer
> Lloyd J. Farrer
> /s/ George J. Lyon
> George J. Lyon
> SELLERS
> /s/ John J. Greer
> John J. Greer, for and
> behalf of himself and other
> undisclosed partners
> BUYER

After discussing the language of the sales agreement and its effect on subsequent corporate dividends with plaintiffs on March 21, 1977, Willie provided them with his notice of acceptance of negotiated sale that same date. In the body of the notice he stated:

> Please be advised that pursuant to an Agreement by and between myself and each of you dated March 11, 1974, I hereby exercise my right to buy all of the shares of stock owned by Lloyd J. Farrer and George J. Lyon in Spencer Community Antenna System, Inc., at a price based upon the price the negotiating party would be receiving for his one-half interest in the corporation from the outside purchaser, John J. Greer, for and on behalf of himself and other undisclosed partners. Said agreement being dated February 25, 1977, a copy of which is attached hereto.

A copy of the February 25, 1977, sales agreement was attached to the notice.

In their petition, plaintiffs acknowledge delivery of Willie's notice to them on March 21, 1977. However, they allege Willie forfeited his option because he "failed and refused" to pay the price provided in the negotiated sale to Greer. The record shows the parties and their attorneys met on June 8, 1977. Willie attempted a tender at that time which plaintiffs rejected. He offered them $500,000 in bank drafts of $486,000 and $14,000, but the parties did not agree on what effect other provisions of the sales agreement would have on the amount required to be paid.

Subsequently, Willie's attorney notified plaintiffs by letter dated June 13, 1977, that Willie would make a new tender to them at the corporate offices in Spencer at 10:00 a. m. on June 17, 1977. In that letter, Willie said he would pay plaintiffs $500,000 for the stock on that date and would submit disputed issues in a subsequent declaratory judgment action.

Plaintiffs did not come to the corporate offices on June 17, 1977. Instead, they commenced this litigation on June 13, 1977, the date of Willie's letter notifying them of his intention to make the June 17 tender.

The parties agree that in the June 8 meeting, which was transcribed by a court reporter, plaintiffs rejected Willie's tender. They did not agree with Willie regarding the amount he was required to tender but would not say what they believed was required. Plaintiffs' counsel told Willie at the beginning and end of the meeting that he had already lost the option by failing to match the price in the negotiated sale. He said, "I don't think you even have an option to buy the stock, never have had, always had a position you lost your own option."

Willie contends that he tendered payment equal to the negotiated sale price but, even if he did not, that he was excused from the obligation because plaintiffs repudiated the option. We believe the record shows, as a matter of law, plaintiffs did repudiate the option by the time they failed to appear for the proposed June 17 settlement. They said

they "replied" to Willie's tender of June 13 by their lawsuit filed that date to try to compel him to deliver his stock so it could be transferred to the Greer group. By this and by failing to appear for the June 17 tender, they made it clear they did not believe Willie had any rights under the buy-sell agreement.

As the trial court held, and as plaintiffs agree, Willie had to do two things to exercise his option. First, he had to give notice of his intention to exercise his first right to buy within sixty days of February 25, 1977. Second, he had to pay the purchase price within 120 days of the same date. It is indisputable that he met the first requirement. The only issue is whether he met the second. He had until June 25, 1977, to do so, but plaintiffs refused to give him that opportunity.

Plaintiffs argue Willie lost his option by making "counteroffers" in his meetings with plaintiffs on March 21 and June 8. However, the record does not show any conduct by Willie which is inconsistent with his expressed intention to exercise his option. Assuming he could have acted so inconsistently with his stated intention as to be held to have repudiated the option, no evidence to support such a conclusion appears. Instead, the most he can be charged with is putting an interpretation on the sales agreement which best served his interests. It is plaintiffs who rejected the option.

When a tender would be to no avail, it is excused. The general principle is that "where one party to a contract attempts to perform and the other refuses performance, the former may recover as effectually as though performance had been completed; the refusal to accept performance being a waiver of any further effort on the part of the party offering the performance to carry out the terms of the contract." *McDermott v. Mahoney*, 139 Iowa 292, 303–04, 115 N.W. 32, 37 (1908). When the party to whom the tender would be made has repudiated the contract, the tender is a useless act. *Kuhlman v. Weiben*, 129 Iowa 188, 190, 105 N.W. 445, 446 (1905). This principle is applicable to options. *See Figge v. Clark*, 174 N.W.2d at 437; *Steele v. Northup*, 259 Iowa at 451, 143 N.W.2d at 306; *Butler v. Threlkeld*, 117 Iowa 116, 119, 90 N.W. 584, 585 (1902); 74 Am.Jur.2d *Tender* § 4 (1974); 86 C.J.S. *Tender* § 5, at 559–60 (1954).

On this basis, the trial court erred in rejecting Willie's assertion that he was excused from making a valid tender by the June 25 deadline. This ground is sufficient to show the court erred in entering summary judgment for plaintiffs.

However, it does not answer the question whether Willie in fact made a valid tender and is thus entitled to summary judgment on his cross-petition. Nor, if he did not make a valid tender, does it excuse Willie from doing so before he is entitled to specific performance of the buy-sell agreement. This is because a holding that a tender was excused means only that the party may now make a valid tender and it will be treated as if it were made on the last day of the option period. *See* 74 Am.Jur.2d *Tender* § 4, at 548 (1974) ("Where a debtor has the option to pay before maturity, a refusal made before maturity has the same operation and must be attended with the same consequences as if the tender had been made on the last day on which payment could have been made according to the terms of the agreement.").

At this point, we hold only that the trial court erred in entering summary judgment for plaintiffs because Willie was excused from making a tender within the 120-day period.

*IV. The validity of Willie's attempted tenders.* If either of Willie's tenders was valid, then he met the second requirement to exercise his option. If neither of those tenders was valid, he must still be given the right to make a valid tender because he was excused from doing so by plaintiffs' repudiation of the option.

The problem is that it is impossible to decide whether Willie's tenders were sufficient without a trial to determine the terms of the negotiated sale. Interpreta-

tion of the contract depended in part upon extrinsic evidence, thus requiring resolution by the trier of fact. *See Connie's Construction Co. v. Fireman's Fund Insurance Co.*, 227 N.W.2d at 210. Consequently the terms of the negotiated sale which must be met by Willie cannot be decided in a summary judgment proceeding.

The parties interpret the negotiated sale differently in four respects. First, they disagree on the right of the stockholders to keep a $28,000 dividend which was voted by plaintiffs over Willie's objection on May 31, 1977. Second, the parties do not agree on whether the cash in the corporation on the closing date was to be added to the base sales price. Third, they differ on whether corporate liability for prepaid subscriptions was to be prorated upon closing to the exact date or to the end of the month. Fourth, they cannot agree on whether the buyer was to assume the shareholders' tax liability if the closing occurred after the end of its taxable year.

*A. The right to the dividend.* The negotiated sale with the Greer group contained the following disclaimer: "Sellers warrant no specific amount of cash on hand or in the bank accounts on [the date of closing] . . . ." Plaintiffs contend this means they were entitled to take cash out of the corporation by declaring a dividend before the closing date. Willie asserts that a vendee in an executory contract is entitled to such dividends. This dispute presents a question of fact because extrinsic evidence was introduced on that issue.

In support of their interpretation, plaintiffs offered two letters written subsequent to execution of the sales agreement. One, dated March 23, 1977, was written by R. D. Bertell, the attorney who drafted the agreement for the Greer group. His letter stated in part: "The sale price was to be $1,000,-000.00. As purchasers, we were not expecting any cash to be in the bank account on the date the sale was closed." The second letter, written on June 2, 1977, by John Greer, confirmed this view.

Plaintiffs assert these letters settle the issue because they manifest a binding practical construction which the parties to the sales agreement have given it. It is true that intent may be demonstrated by practical construction of a contract by the parties. *See, e. g., Ackerman v. Lauver*, 242 N.W.2d 342, 347 (Iowa 1976). Nonetheless, the extrinsic evidence need not be taken by the trier of fact as a verity. *See Moser v. Brown*, 249 N.W.2d 612, 616 (Iowa 1977). The trial court erred in deciding the issue as one of law alone. The facts must be found before the law can be applied.

The law to be applied is that a dividend declared while an executory contract for sale of the stock exists belongs to the vendee unless the parties have agreed otherwise. *See Redhead v. Iowa National Bank*, 127 Iowa 572, 103 N.W. 796 (1905); 19 Am.Jur.2d *Corporations* §§ 892–94 (1965); Annot., 60 A.L.R. 703, 706–07, 710–11 (1929); 18 C.J.S. *Corporations* § 470(b) (1939). The purpose of the rule is to ensure that the vendee receives all he has paid for since the value of the dividend ordinarily would have been reflected in the purchase price of the stock. Section 496A.29, The Code, does not change this rule. It fixes the record date for determining shareholders entitled to dividends, but it does not affect the equitable rule which is based on a theory of beneficial rather than legal title. *See* 19 Am.Jur.2d *Corporations* § 893, at 374 (1965).

This means the Greer group would have a right to the dividend under the negotiated sale unless the court finds from the language of the contract and the relevant evidence that the sales agreement provides otherwise.

*B. Cash on hand.* The same contract provision is involved in the parties' dispute about what was to be done with any cash in excess of liabilities which was on hand or in corporate accounts on the closing date. This dispute is not necessarily answered by the disclaimer of duty to have any specific amount of cash in the corporation. The issue is whether, despite such warranty, the buyer would take whatever cash was actu-

ally left there. Plaintiffs contend the disclaimer of warranty is a reservation of cash; Willie contends it is not, relying in part on language in the contract that "all assets owned and held by the corporation on the date that said corporate stock is transferred shall remain as corporate assets."

Plaintiffs contend the Bertell and Greer letters are also conclusive on this issue. The trial court agreed, but we hold that a question of fact existed. The issue should not have been resolved by summary judgment; the task of the court at trial will be to weigh the evidence in the light of the language of the contract and decide what the parties' intention was.

*C. Prepaid subscriptions.* The third area of dispute concerns prorating the prepaid cable TV subscriptions to charge the plaintiffs with liability for the unearned portion of the subscriptions as of the closing date. Paragraph three of the sales agreement provided: "It is, however, understood and agreed that any prepaid subscriptions paid to the corporation for service for and after the date of the within sale shall be prorated to said date of sale and said prorated amount shall be paid back by Sellers in cash to the corporation . . . ."

Willie contends this meant the prepaid subscriptions were to be prorated to the exact date of closing, so, for example, his June 8 tender prorated them to June 8, 1977. Plaintiffs allege the subscriptions were to be prorated as of the last date of that month. This issue is also one of fact because it involves interpreting the contract in the light of extrinsic evidence. Therefore the trial court erred in deciding the issue in plaintiffs' favor in the summary judgment proceeding.

By affidavit, Willie avers that at the March 21, 1977, meeting of the parties Lyon stated the proration date was the closing date and Farrer assented. In a subsequent deposition, Lyon said he had not discussed the issue with Greer. Support for Willie's position may be found in a deposition of Greer, who testified "there would have to be certain adjustments . . . on the day of settlement for pre-paid . . . ."

In his June 2 letter, Greer said the agreement required "accounting adjustments on the day of settlement."

The intent of the parties to the sales agreement on this issue is for the trier of fact to determine upon trial.

*D. Liability for taxes.* The corporation's taxable year ended May 31, 1977. Because it is a subchapter S corporation, its undistributed taxable income is attributable to the shareholders in proportion to their percentage of stock ownership on that date. *See* I.R.C. § 1373(b); B. Bittker & J. Eustice, Federal Taxation of Corporations and Shareholders ¶ 6.05 (1979).

Plaintiffs allege that the sales agreement required the Greer group to pay an additional amount equal to the shareholders' liability for income taxes for the corporate year ending May 31, 1977, if closing occurred after that date. Willie contends the agreement contains no such provision. The agreement does address liability for earlier taxes, charging plaintiffs with responsibility for taxes due for the period through May 31, 1976. The trial court found it unnecessary to decide the issue of liability for 1977 taxes because it held the Willie tenders were inadequate on the other grounds.

Interpretation of the agreement to decide this issue depends upon extrinsic evidence and thus is for the trier of fact.

Lyon acknowledged in his deposition that if closing occurred after May 31, 1977, "the way the contract was written we would have to pay the tax." However, he said the parties to the sales agreement contemplated a closing date before May 31, in which event the Greer group would be liable for the taxes. He said Willie had previously expressed no interest in buying plaintiffs' stock, and they assumed he would not exercise his option when they negotiated the sale to the Greer group. The Bertell letter of March 23 confirmed that the parties had assumed a closing before May 31, and the Greer letter of June 2 stated that the tax liability of the shareholders would be added to the purchase price.

The intent of the parties on this issue must be ascertained as of the date the sales agreement was made. Willie cannot be bound to match terms established by subsequent agreement.

We recognize that plaintiffs and Willie each seek a determination of their specific performance claims by summary judgment. However, neither side may have summary judgment when genuine issues of fact exist. *Anita Valley, Inc. v. Bingley*, 279 N.W.2d 37, 41 (Iowa 1979). This is true even when the parties each contend no issue of fact remains for trial. *See Tip Top Distributing Co. v. Insurance Plan Savings & Loan Association*, 197 N.W.2d 565, 568 (Iowa 1972). Moreover, even in an equity case we cannot find facts de novo in an appeal from summary judgment.

For the guidance of the trial court upon remand, we point out that, whichever party ultimately prevails in this case, specific performance is an appropriate remedy. The requirements set forth in *Tschirgi v. Merchants National Bank*, 253 Iowa 682, 689, 113 N.W.2d 226, 230 (1962), are met. A contract for sale of stock of a closely held corporation which is not procurable in any market is a proper subject for specific performance. *See id.* at 693, 113 N.W.2d at 232; *Schmidt v. Pritchard*, 135 Iowa 240, 247–48, 112 N.W. 801, 804 (1907); *Reese v. Hatfield*, 201 Neb. 540, 544, 270 N.W.2d 898, 900 (1978).

We also note other principles for the court's consideration in passing upon the adequacy of Willie's tenders. First, to be effective a tender must be absolute and unconditional. *Miller v. Merritt*, 233 Iowa 230, 237, 8 N.W.2d 726, 730 (1943). However, if the tender is otherwise valid, the mere fact it is made under protest does not make it conditional. *See Jaynes v. Heron*, 46 N.M. 431, 130 P.2d 29 (1942); 86 C.J.S. *Tender* § 32(a), at 574 (1954). Nor is it made conditional merely by a demand that the optionor fulfill his obligations under the contract. *Brecht v. Cedar Rapids Development Co.*, 257 Iowa 1117, 1123–26, 136 N.W.2d 287, 291–93 (1965). Second, when a

tender is to be made in cash, the form of payment is not limited to coin or currency unless the parties have so agreed. *See generally, Greenberg v. Alter Co.*, 255 Iowa 899, 124 N.W.2d 438 (1963). Moreover, any objection to the form of payment is waived unless urged at the time the tender is made. § 538.8, The Code; *Shay v. Callanan*, 124 Iowa 370, 373–74, 100 N.W. 55, 56 (1904). Finally, subject to a condition not applicable here, a written offer to pay a particular sum of money, if not accepted, is equivalent to the actual tender of the money. § 538.6, The Code; *Swanson v. Baldwin*, 250 Iowa 342, 345, 93 N.W.2d 740, 743 (1959).

Even though we have considered the other issues raised by the parties, we do not believe they affect this appeal or are likely to arise again after remand. Hence we do not reach them.

In sum, we hold that neither side was entitled to summary judgment. Willie was required to take two steps to exercise his option. He took the first step, but was excused by plaintiffs' conduct from tendering the purchase price contemplated in the negotiated sale to the Greer group. Issues involving interpretation of the sales agreement must be determined after trial. When those determinations are made, the trial court shall decide whether either of the tenders by Willie matched the payment required in the negotiated sale. If either did, Willie is entitled to recover on his cross-petition for specific performance upon payment of that amount, with the adjustments provided in the contract to be made as of the date of transfer of plaintiffs' stock to him. If neither tender was adequate, Willie must be given a reasonable time, to be determined by the court, within which to make a valid tender of the payment called for in the negotiated sale, also with the required adjustments to be made as of the date the stock is transferred. If Willie makes such tender, he is entitled to specific performance. If he fails to do so, plaintiffs are entitled to specific performance under count one of their petition.

The trial court erred in entering summary judgment on count one of plaintiffs'

petition and in dismissing defendant's cross-petition.

REVERSED AND REMANDED.