Marla ROWEN, Mary E. Farnsworth, For Themselves and all Other Policyholders-Members of LeMars Mutual Insurance Company of Iowa, and for Themselves and All Others Similarly Situated, Appellants,

v.

LeMARS MUTUAL INSURANCE COMPANY OF IOWA, Appellee,

Alice Alesch, Executor of the Estate of John Alesch, a/k/a John H. Alesch, Clyde Eastman, Alice W. Alesch, M.H. Tappan, W.K. Tappan, P.G. Vandermeer, M.H. Gearke, John M. Vollmar and Burton Dull, and The Iowa Mutual Insurance Company of DeWitt, Iowa, Raymond A. Brown, William Couch, George S. Howes, Carl J. Smith, Carman G. Smith, and Alesch, Inc., Margaret A. Sevenich, Mark Kay Buffington and Jane M. Warnock, Defendants.

No. 83–1131.

Supreme Court of Iowa.

Nov. 14, 1984.

Michael R. Mundt and D.R. Franck of Franck, Mundt, Nepper & Franck, Denison, for appellants.

Robert D. Mishne of Klass, Whicher & Mishne, Sioux City, for appellee LeMars Mutual Insurance Company of Iowa.

Thomas J. Miller, Atty. Gen., and Fred M. Haskins, Asst. Atty. Gen., for amicus curiae Commissioner of Insurance.

Considered by REYNOLDSON, C.J., and McCORMICK, LARSON, SCHULTZ, and CARTER, JJ.

McCORMICK, Justice.

This is the fourth appeal in a derivative action brought by policyholders of LeMars Mutual Insurance Company (LeMars) to an-

nul the takeover of LeMars by Iowa Mutual Insurance Company of DeWitt (Iowa Mutual). Prior appeals are reported at 230 N.W.2d 905 (Iowa 1975), 282 N.W.2d 639 (Iowa 1979), and 347 N.W.2d 630 (Iowa 1984). In the most recent appeal this court decided certain financial issues arising from the court-ordered separation of the two companies. The present appeal is taken by the plaintiff policyholders from the district court's decision of the remaining issue in the case, an order establishing a plan for election of a new board of directors for LeMars. We find that we have jurisdiction of the appeal and that the district court did not abuse its discretion in adopting the election plan proposed by the LeMars interim board.

In its initial decree ordering separation of LeMars from Iowa Mutual, the district court stated it would appoint an interim board of directors to govern LeMars. The court also said:

As soon as practicable, the court shall also order and supervise the election of a new board of directors for LeMars Mutual. Interim directors shall be eligible to succeed themselves. The successor board shall not be elected until the interim board has had full opportunity to assess the present status of LeMars Mutual, consult with the Iowa insurance commissioner, retain competent management for the company and establish and implement a plan for the careful separation of LeMars Mutual and Iowa Mutual.

This portion of the decree was affirmed in the second appeal. See 282 N.W.2d at 657. In upholding the provision this court said that the traditional policy of courts to keep hands off corporate affairs had to give way to the responsibility of an equity court to fashion unusual relief to meet unusual circumstances. *Id.* The separation of the companies having subsequently been completed, the time came for the district court to decide the manner in which the new LeMars board was to be elected.

LeMars, through its interim board, devised an election plan that was submitted to the court for approval. Plaintiffs, in their capacity as policyholders, objected to the plan, and a hearing was held. The court decided to accept the plan and ordered it carried out, reserving jurisdiction in the case only "to police, amend, extend, and to resolve disputes concerning [the] plan, any elections held pursuant thereto, and of any matters requiring court approval thereunder." Plaintiffs appealed and this court raised an issue of finality of the district court order. The jurisdictional issue was briefed by the parties and was ordered submitted with the appeal.

I. *Jurisdiction.* Appeals are available as of right only from final orders, and we lack jurisdiction of appeals from interlocutory orders unless permission to appeal is granted. *See* Iowa R.App. 1 and 2. Ordinarily a final judgment conclusively adjudicates all of the rights of the parties. If it stands, the court cannot put the parties in their original positions. *Shoemaker v. City of Muscatine*, 275 N.W.2d 206, 208 (Iowa 1979).

We have recognized that it is not always clear whether an order is final. To allow for the small fraction of cases where a party may improvidently attempt an appeal as of right from an order that is determined to be interlocutory, we added Iowa Rule of Appellate Procedure 1(c) to permit the papers in those cases to be treated as an application for interlocutory appeal under rule 2. In so doing, we did not change the standard for determining when interlocutory review should be granted. *See In Interest of Long*, 313 N.W.2d 473, 477 (Iowa 1981). Because interlocutory review is granted very sparingly, no party should take an appeal as of right from an interlocutory order in the hope it will be saved from dismissal by application of rule 1(c).

In the present case, the district court resolved the final issue in the litigation but did not foreclose the parties from raising additional issues during the course of implementation of the election plan. If plaintiffs are precluded from challenging the plan now, however, their objections will

become moot because the district court's jurisdiction terminates only when the plan has been carried out. If the plan were carried out, the court would not be able to return the parties to their former positions. The adjudication lacks finality only if it makes a difference that the district court reserved jurisdiction to decide issues that may arise while the adjudication is being implemented. We find that the adjudication is final because the case falls within the rule that a case may have more than one final order. *See Green v. Advance Homes, Inc.*, 293 N.W.2d 204, 207 (Iowa 1980); *Lyon v. Willie*, 288 N.W.2d 884, 887 (Iowa 1980); *Johnson v. Johnson*, 188 N.W.2d 288, 293 (Iowa 1971).

The situation is analogous to the one in *Green*. There a landowner sued a contractor alleging that its road excavation had deprived her farmland of lateral support. She sought damages and a mandatory injunction requiring restoration of the land to its prior condition. The trial court entered a judgment in the landowner's favor, including a provision ordering the contractor to submit a plan for restoring lateral support. 293 N.W.2d at 206. Upon the contractor's appeal, this court held that the judgment was final. We reasoned that the judgment settled the relative rights of the parties, "leaving only the particulars of the equitable relief to be worked out." *Id.* at 207. The district court went one step further in the present case by adjudicating the particulars of equitable relief, leaving. unsettled only issues that might arise during implementation of the plan.

We hold that the district court decision was final for purposes of appeal. Plaintiffs thus had a right to appeal and we have jurisdiction.

II. *The merits of the election plan.* Pursuant to its initial decree the district court appointed eleven persons to an interim board of directors for LeMars. The board employed new management for LeMars and established and carried out procedures to separate LeMars from Iowa Mutual as directed by the court. Iowa Mutual controlled LeMars for approximately ten years and it took more than two years to separate the two companies. Finally in December 1982 the LeMars interim board determined that its tasks were complete and that the court should adopt a plan for supervising the election of a new board.

The plan proposed by LeMars called for a reduction in board size to nine members, the number called for in the LeMars bylaws. The interim board was to be reduced to that size by attrition or resignation of named members, if necessary. Board members were divided into three categories with three directors to be replaced at the annual meeting of the company in each of three years starting in April 1984. The supervised election process would be completed in April 1986, after which elections were to be held pursuant to the LeMars articles and bylaws.

Procedures for the supervised elections included notice on two occasions in six designated newspapers in advance of each annual meeting. To be eligible for nomination, candidates would have to be policyholders at the time of election between 21 and 67 years old. A nominating committee comprised of the board chairman, the company president, and a LeMars agent selected by the directors was to nominate not less than three nor more than six persons for the three directorships to be filled at the annual meetings.

Policyholders were to propose candidates by letter or petition addressed to the nominating committee, signed by not less than five policyholders, containing names and addresses of persons proposed, accompanied by a statement of the candidate consenting to serve and establishing eligibility. A credentials committee was to investigate each candidate's eligibility and qualifications and report to the nominating committee. The credentials committee would include a company director, a LeMars agent, and a "prominent businessman or businesswoman residing in northwestern Iowa," all appointed by the nominating committee.

All policyholders could vote at the annual meeting in person or by proxy, but only the company could solicit proxies. The plan

provided that the company could, if it desired, "solicit and procure proxies without any conditions or limitations as to their use in order to ensure an adequate interest in and representation of policyholders at the annual meeting."

Plaintiffs objected to the election plan, asserting that it effectively denied the policyholders the right to elect the board for three years. Plaintiffs proposed that the court directly supervise an election, notifying each policyholder by mail and inviting nominations. The court would then screen the nominations to be sure that none were connected with the defendants in the derivative suit. Under plaintiffs' proposal the court would subsequently mail ballots to the policyholders accompanied by a one page statement from each nominee. The nine nominees receiving the most mailed ballots would be declared elected.

After a hearing, the district court overruled plaintiffs' objections and adopted the LeMars plan. Plaintiffs contend the court erred in failing to adopt procedures for a fair and timely election. They attack the nomination and proxy limitations, the notice provisions, the duration of court supervision, and the lack of corporate democracy in the plan. LeMars argues that the plan is a reasonable means for assuring the stability of LeMars while control is returned to its policyholders in an orderly process.

■ The parties agree that our review of the district court's order is for abuse of discretion. This discretion is embraced within the court's authority, affirmed in the second appeal, to supervise the election of a new board of directors for LeMars. We reverse for abuse of discretion only when such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Glenn v. Farmland Foods, Inc.*, 344 N.W.2d 240, 243 (Iowa 1984).

The district court was convinced that the election plan proposed by the interim board served the best interests of the policyholders by ensuring the stability of LeMars during the transition from court to policy-

holder control. The court was persuaded by a number of circumstances to which the parties agreed LeMars' witnesses would testify. LeMars argued that qualified directors are difficult to find for a small insurance company like LeMars, that the litigation had divided LeMars employees and agents so that a destructive fight for control of the company might occur, that an immediate election of an entirely new board would threaten the continuity of management, that the president selected by the interim board needed continued support from the directors, that a sudden change of control could jeopardize the company's operations because of a shortage of qualified and experienced middle management people, and that LeMars was in the midst of establishing its own system of data processing which would take several years to complete. LeMars contended that an abrupt shift of control to a new board in these circumstances would put the survival of the company at risk. In resisting plaintiffs' proposal for mailing notices and ballots, the board asserted that mutual insurance companies do not generally provide such mailings even under normal conditions and that the cost of doing so could be as much as $500,000.

■ The question that divides the parties is not whether but when LeMars should have a democratically elected board. The special limitations on election procedures imposed by the court would delay the return of total control of LeMars to the policyholders for three years. Plaintiffs argue that these limitations are unnecessary and undesirable, and LeMars argues otherwise. Cases relied on by plaintiffs involve successful challenges to bylaw restrictions on regular election procedures. *See, e.g., Brennan v. Minneapolis Society for the Blind, Inc.*, 282 N.W.2d 515 (Minn.1979), and *Dozier v. Automobile Club of Michigan*, 69 Mich.App. 114, 244 N.W.2d 376 (1976). These cases are inapposite here. The present case does not involve the validity of LeMars bylaws. Nor does it involve a mutual insurance company in normal circumstances. Instead it involves a mutual

company that was illegally taken over at a time when democratic election procedures were in place and whose governance has been the subject of complex litigation for more than ten years. As a result of the litigation the corporation was run for more than two of those years by directors appointed by an equity court. Charged with a duty to supervise the transition from the interim board to an elected board, it was not unreasonable for the court to impose temporary restraints on election procedures to ensure the stability of the company during the transition period.

We find no abuse of discretion in the district court's order adopting the LeMars election plan.

AFFIRMED.

All Justices concur except CARTER, J., who concurs specially.

CARTER, Justice (concurring specially).

The majority appears to approve a court-imposed limitation on solicitation of proxies on the ground that it is in the best interests of the company to retain the present directors in whole or in part. I do not believe that a court of equity should condition the election of directors of a membership association in a manner which favors a particular outcome in the elective process. I do believe, however, that there are other reasons, based on promoting fairness in the election process, which justify the limitations which the district court imposed. I therefore concur in the result.