# IN THE COURT OF APPEALS OF IOWA

No. 22-0128
Filed April 26, 2023


**NO BOUNDRY, LLC,**
　　　Plaintiff-Appellant,

**vs.**

**BRANDI SMITHSON,**
　　　Defendant-Appellee.
_____


Appeal from the Iowa District Court for Scott County, Mark D. Cleve, Judge.


The recipient of a tax sale deed appeals a district court ruling in its forcible-entry-and-detainer action finding the party in possession had a right to redeem. **REVERSED AND REMANDED WITH DIRECTIONS.**


Charles P. Augustine of Klatt, Augustine & Rastede, PC, Waterloo, for appellant.

Leah Patton, Ames, for appellee.


Considered by Bower, C.J., and Greer and Badding, JJ.

**BADDING, Judge.**

The recipient of a tax sale deed—No Boundry, LLC—appeals a district court ruling in its forcible-entry-and-detainer action finding the party in possession—Brandi Smithson—had a right to redeem under Iowa Code section 447.7 (2021) due to a "legal disability."  Hidden within this challenge are questions about the finality of the court's ruling and the code year the parties and the court used to analyze Smithson's right to redeem.  We conclude the court's ruling was final, apply the correct version of the statute in our de novo review of the record, and reverse and remand with directions.

## I.     Tax Sale Timeline

On June 18, 2018, following a public tax sale, an entity named Wago 262 received a certificate of purchase for the property at issue—a condominium owned by Brandi Smithson.  *See* Iowa Code § 446.29 (2018).  This certificate did not actually transfer ownership of the property to Wago 262.  *See Kluender v. Plum Grove Invs.*, 985 N.W.2d 466, 468 (Iowa 2023).  It instead amounted to "an inchoate right or lien" because, even after the tax sale is done and the certificate of purchase issued, the property owner still has two years to redeem the property under Iowa Code section 447.1.  *Id.* (citations omitted).

In April 2020, Smithson, as the "person in possession of the parcel" and "in whose name the parcel is taxed," was given a ninety-day notice of the expiration of her right to redemption.  Iowa Code § 447.9.[1]  On July 30, Wago 262 assigned its rights in the certificate of purchase to its affiliated business, No Boundry, LLC.

---

[1] As will be explained later in this opinion, "[t]he law in effect at the time of tax sale governs redemption."  Iowa Code § 447.14.

*See id.* § 446.31. Smithson did not redeem the property within ninety days after the notice of expiration. As a result, the county treasurer issued a tax sale deed to No Boundry, which was recorded on August 18. *See id.* § 448.1.

## II. Forcible Entry and Detainer

On July 6, 2021, No Boundry served a notice to quit on Smithson, demanding that she vacate and surrender the premises within three days, due to the "holding over in possession after the issuance of a valid tax deed." *See id.* §§ 648.1(6), .3 (2021). On July 15, No Boundry petitioned for forcible entry and detainer. A hearing on the petition was set for August 3. *See id.* § 648.5(1). After Smithson did not appear for the hearing or respond to the petition, the court entered judgment for No Boundry, and a writ of removal and possession issued soon after. *See id.* § 648.22.

On August 25, Smithson moved to set aside the judgment and issuance of a stay or injunction. She argued her "failure . . . to timely file an answer and defend the [forcible-entry-and-detainer] proceeding is based on her legal disability," pointing out that she "suffers from several mental health diagnoses that make it difficult if not impossible for her to manage day-to-day living, including her finances." She also pointed out that her legal disability serves as "a meritorious defense" to the action. The court granted the motion, following which Smithson filed an answer and counterclaim, asserting she still had a right of redemption due to her legal disability.

The matter proceeded to a hearing on December 14, at which forensic psychologist Dr. Lindsay Dees testified on Smithson's behalf. She conducted a psychological evaluation of Smithson in June 2021, when Smithson came to her

"in a state of distress" because "she was in danger of losing her home and . . . she needed to talk to somebody to see if there was any way that her home could be saved." As part of the evaluation, Dr. Dees conducted a clinical interview and personality assessment of Smithson and reviewed some of her medical records.

Dr. Dees testified Smithson "has a pretty significant history of trauma . . . from childhood." On top of that childhood trauma, Smithson was involved in at least one domestically violent relationship. And in August 2018, her younger sister died by suicide, after which Smithson "began to struggle with feelings of guilt, suicidal ideation, hopelessness, and sadness." Those feelings led to Smithson attempting suicide eight times in the last two years, most recently in October 2020. Smithson "denied a significant mental health history prior to her sister's death," but she was diagnosed with ADHD in 2007.

As to Smithson's "present mental status" during the evaluation, Dr. Dees observed Smithson "interacted well," was cooperative, and "[h]er thought process was generally logical and goal-oriented." While she "displayed a range of emotion during the interview," her "emotion was always appropriate to and consistent with the content of her speech." Her "attention and concentration appeared unimpaired, yet she displayed some impairment in her memory for remote and recent events." Smithson had "[n]o impairments in reality contact," and "[s]he did not report experiencing any auditory hallucinations, bizarre thoughts, or other psychotic symptoms." Smithson's "speech was generally clear, coherent, and logical." However, "her mood was predominantly anxious, dysphoric, and sad."

All in all, Dr. Dees found Smithson met the diagnostic criteria for post-traumatic stress disorder, major depressive disorder, and borderline personality

disorder. During her testimony, Dr. Dees agreed that, at the time of the evaluation, Smithson "lacked the ability to function adequately in her daily life." She described Smithson as "child-like"—"there's a very just big lack of ability to make decisions" and "her level of functioning was pretty grave." Dr. Dees also agreed Smithson's abilities to plan, reason, and make good decisions were severely impaired.

Smithson's former boyfriend, Eric Hansen, also testified at the hearing. He met Smithson in 2009 and began living with her in Florida about a year later. A few years later, Smithson received a close to $1 million settlement after a fall that "smashed her foot" and broke her arm. Because Hansen took care of the couple's finances, Smithson deposited the money into an account with his name on it. But when Smithson decided to return to Iowa in 2016 or 2017, she put the money into a different account that Hansen could not access. She then used some of the settlement money to buy the property at issue in this case. The rest was depleted by early 2019 because, according to Hansen, Smithson was an "easy mark" for predatory people looking for loans that they never paid back.

Hansen testified that when they lived together, Smithson functioned pretty well, although he still had concerns for her ability to manage her day-to-day affairs. He explained that she has trouble "adulting"—"paying bills, working, things that are normal that responsible adults do." Hansen elaborated: "She's not braindead. She just doesn't get some things. She doesn't understand things. She doesn't function well at all times." But after Smithson's sister committed suicide, Hansen said that her condition worsened. She became very depressed, according to Hansen, so much so that she was hospitalized for mental-health treatment in December 2019, May 2020, and October 2020. Hansen still lives in Florida, but he worries about

Smithson to such an extent that he has others check on her. He testified that he has often paid her bills for her because she simply forgets to do so, which results in her utilities being shut off or small claims suits being filed against her. Because Hansen did not believe Smithson could handle her finances by herself, he planned to seek a conservatorship for her.

In its ruling, the district court framed the issue as "whether [Smithson] suffers from a legal disability and thus may avail herself of an additional period in which to redeem the property, as set forth in Iowa Code [s]ection 447.7." Following both parties' lead, the court considered the issue under an amendment to section 447.7 that took effect on July 1, 2018—shortly after the tax sale of Smithson's property. Largely relying on the testimony of Dr. Dees and Hansen, which the court found credible, the court concluded Smithson "established by clear and convincing evidence that she has suffered from a legal disability at all times pertinent to this proceeding." The court ordered Smithson to pay the stipulated redemption amount of $12,300 to the clerk of court within thirty days, upon which "the court may take further action as required by Iowa Code section 447.7(1)(e) or that if no such payment is made the court may take action as required by Iowa Code section 447.7(1)(f)."

No Boundry appeals, claiming "the evidence failed to support the trial court's holding that Smithson was under a legal disability prior to the issuance of the tax sale deed." If this claim fails, No Boundry requests that we remand the matter for recalculation of the redemption amount to reflect interest and taxes that accrued while the appeal was pending.

### III.    Standard of Review

Forcible-entry-and-detainer actions are equitable, so appellate review is de novo.  *See* Iowa Code § 648.15; Iowa R. App. P. 6.907; *ACC Holdings v. Rooney*, 973 N.W.2d 851, 853 (Iowa 2022); *see also Sibley State Bank v. Zylstra*, No. 19-0126, 2020 WL 4814072, at *5 (Iowa Ct. App. Aug. 19, 2020) ("We review de novo all issues related to redemption in an equity action.").

### IV.    Analysis

Before getting to the merits of No Boundry's appeal, we need to deal with two issues lurking in the background—our appellate jurisdiction and the code year applied by the parties and the court in considering Smithson's right to redeem.

### A.    Jurisdiction

Although neither party raised the issue, we are concerned with the form of our appellate jurisdiction.  *See Bribriesco-Ledger v. Kilpsch*, 957 N.W.2d 646, 649 (Iowa 2021) ("[A]n appellate court has responsibility *sua sponte* to police its own jurisdiction." (citation omitted)).  Only final orders and judgments are appealable as a matter of right.  *See* Iowa R. App. P. 6.103(1).  As our supreme court has often repeated,

> [a] final judgment of decision is one that finally adjudicates the rights of the parties.  It must put it beyond the power of the court which made it to place the parties in their original position.  A ruling or order is interlocutory if it is not finally decisive of the case.

*In re Marriage of Thatcher*, 864 N.W.2d 533, 537 (Iowa 2015) (citation omitted).

While this seems straight-forward, determining "what is a final order and what is merely interlocutory" can generate considerable "complexities and perplexities."  *Johnson v. Johnson*, 188 N.W.2d 288, 293 (Iowa 1971).  That is

because it's possible to have two final orders "in a single case, one putting it beyond the power of the court to put the parties in their original positions in relation to a specific issue, and the other adjudicating remaining issues in the case." *Lyon v. Willie*, 288 N.W.2d 884, 887 (Iowa 1980); *accord Johnson*, 188 N.W.2d at 293 ("The same case can and often does contain more than one final order.").

The ruling that No Boundry appealed from followed the multi-step process laid out in Iowa Code section 447.7(2)(d) (2021) for redemption by persons with a legal disability. Consistent with that process, the ruling determined Smithson had a right to redeem because of her legal disability, established the amount necessary to effect redemption, denied No Boundry's claim for a judgment for improvements to the property, and directed Smithson to pay the stipulated redemption amount to the clerk of court within thirty days. *See* Iowa Code § 447.7(2)(d). This all smacks of finality—except that the court contemplated further action after timely payment was either made or not made, as set out in section 447.7(2)(e) and (f).

Even though the court's order contemplated that further action, we think it was still a final adjudication on Smithson's right to redeem and the amount required to do so. *See Johnson*, 188 N.W.2d at 293 ("A judgment, order, or decree finally directing the payment of money is generally held to be appealable. . . ." (citation omitted)); *cf. Billingsley v. Frank*, No. 10-2051, 2011 WL 3116561, at *2 (Iowa Ct. App. July 27, 2011) (finding a district court's determination of "the rights, claims and interests of all parties" and "the amount necessary to effect redemption" under section 447.8(4), the counterpart to section 447.7(2)(d), "will provide the final

resolution of issues").[2]  While Smithson's failure "to timely deliver payment of the total redemption amount" could return No Boundry to its original position, *see* Iowa Code § 447.7(2)(f), that would not be possible if she made the payment.  *See id.* § 447.7(2)(e); *see also Rowen v. LeMars Mut. Ins. Co.*, 357 N.W.2d 579, 581 (Iowa 1984) (determining district court's order establishing a plan for election of a new board of directions was final where, "[i]f the plan were carried out, the court would not be able to return the parties to their former positions").  Because this is one of those cases in which there can be more than one final order, we find the court's ruling is final.  *See Rowen*, 357 N.W.2d at 581.  As a result, No Boundry had a right to appeal, and we have jurisdiction.

### B.     Proper Legal Standard

To further complicate things, we note Smithson based her claim that she was entitled to redeem on a version of the redemption statutes that do not apply here, and the district court applied that scheme in reaching its decision.[3]

---

[2] The issue in *Billingsley* was whether a tax sale deed should be set aside under section 447.8(1)(b) due to lack of notice of the expiration of the right of redemption. 2011 WL 3116561, at *1.  The district court granted the property owner's summary judgment motion on the issue, finding the deed was void, and set a hearing to "determine the rights, claims, and interests of all the parties and establish the amount necessary for redemption," as required by section 447.8(4) and as also required by section 447.7(2)(d).  *Id.*  Before that hearing could take place, the holders of the tax sale deed appealed.  *Id.*  We found the court's summary judgment order was not final but noted: "The hearing under section 447.8(4), which is to determine the 'rights, claims, and interests of all parties,' will provide the final resolution of issues that cannot be decided on the record before us."  *Id.*  We reached that conclusion even though section 447.8(5)(a) and (b), like section 447.7(2)(e) and (f), provides for further action from the court after timely payment or nonpayment of the redemption amount.

[3] There are two recent decisions from our supreme court—*No Boundry, LLC v. Hoosman*, 953 N.W.2d 696, 702–03 (Iowa 2021) and *ACC Holdings, LLC v. Rooney*, 973 N.W.2d 851, 852–53, 856 (Iowa 2022)—that mentioned the newer version of section 447.7 while addressing issues that did not involve the application

To explain, "[t]he law in effect at the time of tax sale governs redemption." Iowa Code § 447.14. Here, the tax sale occurred in June 2018. At that time, section 447.7 did not provide a statutory right of redemption based on "legal disability," but instead provided a right of redemption for "[m]inors and persons of unsound mind." Iowa Code § 447.7 (2018). The version of the statute that Smithson and the district court followed did not take effect until July 1, 2018—a little more than a week after the tax sale. *See* 2018 Iowa Acts ch. 1039, § 2 (striking section 447.7 and replacing it with current version);[4] *see also* Iowa Const. art. 3, § 26 (stating effective date of laws). Thus, the new version of the statute does not apply to this litigation. *See, e.g.*, *Dohrn v. Mooring Tax Asset Grp., L.L.C.*, 743 N.W.2d 857, 863 n.2 (Iowa 2008); (noting statutory amendment that took place after tax sale did not apply to the case); *St. John's Full Gospel Baptist Church v. Tax 207*, No. 11-0553, 2012 WL 1860667, at *5 n.5 (Iowa Ct. App. May 23, 2012) (same).

Though there are significant differences between the two versions of section 447.7, what is common to both is the right of redemption for a person of unsound mind within one year after the disability is removed. *See* Iowa Code

---

of the statute. In *Hoosman*, the issue was whether a default judgment against a homeowner on a petition for recovery of real property should be set aside due, in part, to the owner's claimed legal disability. 953 N.W.2d at 699. And in *ACC Holdings*, the court mentioned the statute in determining whether a tax deed holder could proceed with a third forcible-entry-and-detainer action against a property owner who had failed to pay taxes after dismissing the first two actions against the same owner without prejudice. 953 N.W.2d at 852.

[4] Aside from changing the substance of the statute, the legislation also changed the heading of the statute from "Minors and persons of unsound mind" to "Redemption by minors and persons of unsound mind." Beginning with the 2019 version of the Iowa Code, however, the code editor substituted "persons with a legal disability" for "minors and persons of unsound mind" in the section heading.

§ 447.7 (2018); *id.* §§ 445.1(6), 447.7(2)(a) (2021).  While the old version of the statute provides a right of redemption to minors or persons of unsound mind and the new version provides the right to a person with a legal disability, the meaning of a "person with a legal disability" within the new scheme is defined as "a minor or a person of unsound mind."  *See id.* § 445.1(6) (2021).  And both statutes are concerned with whether that unsound mindedness existed prior to the delivery of the treasurer's deed—the current statute through its express language and the former statute through case law applying its provisions.[5]

So that is the overarching question in this appeal: whether Smithson established by clear, satisfactory, and convincing evidence that she was a person of unsound mind at the time her property was sold and deeded for nonpayment of taxes and therefore has an additional period of redemption.  *See Hawley v. Griffin*, 92 N.W. 113, 115 (Iowa 1902) (referring to "the clear and satisfactory preponderance of the evidence" in examining whether a property owner who lost his lands in tax sales was of unsound mind); *cf. Hult v. Home Life Ins. Co. of N.Y.*, 240 N.W.2d 218, 223 (Iowa 1932) (requiring this showing to set aside contract due to unsound mind); *Crawford v. Raible*, 221 N.W. 474, 481 (Iowa 1928) (requiring

---

[5] The current statute provides: "To establish the right to redeem, the person maintaining the action shall prove to the court that the owner of the parcel is a person with a legal disability entitled to redeem *prior to the delivery of the treasurer's deed*."  Iowa Code § 447.7(2)(b) (emphasis added).  The former versions of the statute did not contain that same language, stating only that "[i]f a parcel of a minor or person of unsound mind is sold at tax sale, it may be redeemed at any time within one year after the disability is removed. . . ."  *Id.* § 447.7 (2018); *accord id.* § 892 (1873) ("If real property of any minor or lunatic is sold for taxes, the same may be redeemed at any time within one year after such disability is removed. . . .").  But cases applying those older versions also placed the relevant time period "at the time the lands in controversy were sold and deeded for nonpayment of taxes."  *See, e.g., Hawley v. Griffin*, 82 N.W. 905, 906 (Iowa 1900).

this showing to set aside conveyance due to unsound mind). Resolution of that question remains guided by case law[6] on our de novo review of the record. *See In re D.L.C.*, 464 N.W.2d 881, 883 (Iowa 1991) ("Although the judge of the juvenile court utilized the wrong standard of review, it is unnecessary for us to return the case to the juvenile court. We review the facts and law de novo, and thus cure the improper juvenile court review."); *see also In re A.K.*, 825 N.W.2d 46, 50 (Iowa 2013) (noting de novo standard of review "requires this court to review the '*facts* as well as the *law* [to] determine from the credible evidence [the parties'] rights anew.'" (alterations in original) (citation omitted)); *State v. Nguyen*, No. 13-0045, 2013 WL 5498072, at *2 n.1 (Iowa Ct. App. Oct. 2, 2013) (noting remand when improper standard is applied by the district court is generally not required in cases of de novo review).

### C.    Unsound Mind

The purpose of the unsound mindedness protection is "to protect those who . . . are incapable of understanding their rights and obligations, and of caring for their own interests." *Hoosman*, 953 N.W.2d at 704 (ellipsis in original) (quoting *Hawley v. Griffin*, 82 N.W. 905, 906 (Iowa 1900)). While "[t]his State has a long history of protecting the property rights of wards deemed unable to protect their own economic interests without assistance," *id.* at 701–02, "the presumption is in favor of sanity, and that acts must be inconsistent with that presumption, to be evidence of insanity." *Hawley*, 82 N.W. at 907.

---

[6] *See Hoosman*, 953 N.W.2d at 704 (highlighting caselaw from the late 1800s and early 1900s in discussing legal disability and unsound mindedness).

"A person of unsound mind is someone who is not capable of exercising the judgment necessarily required in the management of his [or her] ordinary affairs" or "one who is incapable of transacting the particular business at hand." *Id.* (cleaned up) (quoting *Garretson v. Hubbard*, 81 N.W. 174, 174 (Iowa 1899)). "It is not every infirmity of mind that entitles a person to the protection of these statutes, but only such infirmities as render the person affected incapable of comprehending his [or her] duty to pay taxes, and the consequences that follow a failure to pay." *Id.* at 906.

True, Dr. Dees diagnosed Smithson with several mental-health illnesses in June 2021 and testified that she "lacked the ability to function adequately in her daily life" with severe impairments to her abilities to plan, reason, and make good decisions at the time of the trial. Smithson's former boyfriend, Hansen, also noted his concerns for Smithson's ability to manage her day-to-day affairs when they lived together, opining she has trouble "adulting"—"paying bills, working, things that are normal that responsible adults do." And Smithson clearly suffers from depression, which has led to suicide attempts and resulting hospitalization. But the question is not whether Smithson suffered with her mental health or had the ability to do adult things. Instead, the question is whether she was capable of navigating the business at hand—here, the payment of her property taxes. *See Garretson*, 81 N.W. at 174. The evidence shows that she was.

Smithson purchased the home in June 2017. The 2016 taxes on the property were due in September 2017 and March 2018. The first installment was paid, albeit late, in November 2017. The second installment was paid by Wago 262 at the June 2018 tax sale. Property taxes for calendar year 2017 were due in

September 2018 and March 2019. Smithson made both of these payments online. She also made web payments for property taxes in September 2019 and March 2020, attributable for taxes in 2018. So the evidence shows that in between the tax sale in June 2018 and deed issuance in August 2020, Smithson made her regular tax payments, missing only the very first payment, which resulted in the tax sale. Smithson argues that it is unclear from the record whether she made these payments or someone made them on her behalf. But even if someone else made the payments on her behalf, Smithson had the competency to seek out help to ensure her duty to pay taxes was satisfied. *Cf. id.* (indicating fact that owner was capable of seeking help from legal counsel weighed against finding of unsound mind).

The district court overlooked this key evidence, instead relying almost solely on the testimony of Dr. Dees and Hansen. While Smithson certainly struggled with her mental health, those struggles did not prevent her from managing the business at hand. *See id.* Smithson's payment of taxes is clear evidence that she comprehended her duty to pay taxes and the consequences of failing to do so, thus negating a finding that she was of unsound mind at the time when her property was sold and deeded for nonpayment of taxes. *See Hawley*, 82 N.W. at 906. As a result, Smithson was not entitled to redemption following the delivery of the treasurer's deed.

We reverse the district court's contrary conclusion and remand for the entry of "judgment holding that all rights of redemption are terminated and that the validity of the tax title . . . is conclusively established as a matter of law." *See* Iowa Code § 447.8(3) (2018). There is thus no need to address No Boundry's second

issue about recalculation of the redemption amount to reflect interest and taxes that accrued while the appeal was pending.

**REVERSED AND REMANDED WITH DIRECTIONS.**