# IN THE COURT OF APPEALS OF IOWA

No. 14-0241
Filed February 11, 2015

**MERCY HOSPITAL, CEDAR RAPIDS,
IOWA, d/b/a MERCY MEDICAL CENTER
CEDAR RAPIDS, IOWA,**
        Plaintiff-Appellee,

**vs.**

**MARTIN D. MCNULTY and LOYOLA D.
MCNULTY,**
        Defendants,

**and**

**CHARLES JOHNSTON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Robert E. Sosalla,

Judge.


        Holder of a right of first refusal appeals from a directed verdict in favor of

the sellers and a buyer.  **AFFIRMED.**


        Matthew M. Craft and Erin Patrick Lyons of Dutton, Braun, Staack &

Hellman, P.L.C., Waterloo, for appellant.

        Stephen J. Holtman and Chad D. Brakhahn of Simmons, Perrine, Moyer,

Bergman, P.L.C., Cedar Rapids, for appellee.


        Heard by Mullins, P.J., and Bower and McDonald, JJ.

**MULLINS, P.J.**

Charles Johnston appeals from a district court order granting a motion for directed verdict adverse to his breach-of-contract claim against appellees Martin and Loyola McNulty (McNultys). Appellee Mercy Medical Center (Mercy) sued the McNultys for breach of a purchase agreement and sought declaratory judgment that a right of first refusal, held by Johnston, was invalid. Johnston brought a cross-claim that was dismissed by directed verdict. Johnston appeals this ruling. We affirm.

## I.  BACKGROUND FACTS & PROCEEDINGS.

On August 31, 2010, Mercy entered into a purchase agreement with the McNultys for the purchase of a property. The purchase price was $450,000. The closing date was October 1, 2010. The McNultys agreed to convey the property "free and clear of all liens, restrictions, and encumbrances," except those set out in the purchase agreement.

On the closing date, Charles Johnston filed with the Linn County recorder a written right-of-first-refusal agreement between him and Martin McNulty.[1] Johnston and Martin McNulty executed this agreement around 2003, but it had never before been recorded. In relevant part, the agreement stated:

> Mr. Johnston will have 20 days from the date he is noticed in writing of any sale to indicate in writing that he will act on his Right of First Refusal. Mr. Johnston will have 180 days to obtain financing and complete the purchase of the property. No warranties will be made for the property. This is strictly an "as is" purchase subject to any lease in effect at that time. In the event

---

[1] Martin McNulty and Loyola McNulty were divorced in 2008. Both retained an interest in the property at issue here. According to their dissolution decree, Loyola was to receive half the proceeds from the sale of the property.

> Mr. Johnston wishes to purchase the property outright, the price will be $460,000.
>
> This agreement will be in effect until Mr. Johnston withdraws or does not take action during the time period indicated.

Mercy and the McNultys cancelled the October 31, 2010 closing. They sent a written notice of the existing purchase agreement to Johnston on November 9, 2010. On November 29, Johnston informed Mercy and McNulty he intended to exercise his right of first refusal and purchase the property. One-hundred eighty days from November 29, 2010, was May 24, 2011. By that date, Johnston had not tendered the purchase price, offered to close on the transaction, obtained financing, or arranged a § 1031 exchange.[2] Johnston took no affirmative steps to complete the purchase.

Mercy, stating it had no notice of the existence of the right of first refusal, filed a breach-of-contract claim against the McNultys. Mercy filed its claim on December 30, 2010. Mercy also sought a declaratory judgment against the McNultys and Johnston that the right of first refusal was null or unenforceable. Mercy also later amended to its petition a request for specific performance of its purchase agreement. Johnston counterclaimed against Mercy that Mercy's lawsuit against the McNultys was an impediment to Johnston's completion of his purchase on May 24, 2011, and thus an interference with the Johnston-McNulty right-of-first-refusal agreement. Johnston also stated a crossclaim against the

---

[2] Pursuant to § 1031 of the United States Internal Revenue Code, capital gains tax may be deferred where property is exchanged for "property of like kind which is to be held either for productive use in a trade or business or for investment." 26 U.S.C. § 1031(1)(a) (2009).

McNultys for breach of contract and sought an order for specific performance of the right-of-first-refusal agreement.

The parties filed various motions for summary judgment. The court dismissed Johnston's counterclaim against Mercy. The court also granted partial summary judgment on Mercy's breach-of-contract claim. It found the undisputed evidence established the McNultys breached the purchase agreement: they could not convey title "free and clear" at the time of the closing because title was unmerchantable as a matter of law.[3] In reaching its conclusion, the court cited *Fort Dodge, Des Moines & Southern Railway v. American Community Stores Corp.*, wherein our supreme court explained, "'A merchantable title, [as] recognized and accepted in this state, is one which a reasonably prudent man would accept in the ordinary course of business after being fully appraised of the facts and the law applicable thereto.'" 131 N.W.2d 515, 520 (Iowa 1964) (quoting *Halliday v. Arthur*, 44 N.W.2d 717, 719 (Iowa 1950)). The court also cited *Cappel v. Potts*, 185 N.W. 148, 151 (Iowa 1921), wherein our supreme court further explained: "Where defects exist in the record, or there are known facts which cast doubt upon it, the title is unmerchantable on the ground that it is subject to future litigation; a title which exposes the party holding it to litigation is not marketable." Accordingly, the court granted partial summary judgment on Mercy's claim that the McNultys breached the purchase agreement. The remaining issues for trial were the amount of Mercy's damages and its request

---

[3] Finding that Johnston's act of recording the right-of-first-refusal agreement placed a cloud on the title to McNultys's property.

for specific performance, and Johnston's crossclaims against the McNultys for breach of the right-of-first-refusal agreement and for specific performance.

At trial, the court granted Mercy's motion for directed verdict on its petition for declaratory judgment that the right of first refusal was unenforceable. The court found the right of first refusal was unenforceable because Johnston was not ready, willing, and able to complete the purchase on or before May 24 when the 180 days expired.[4] Specifically, the court stated:

> I previously granted [Mercy and the McNultys'] motion for directed verdict with respect to the—Mr. Johnston's right of first refusal on the grounds that, one, it was not impossible for [Johnston] to perform under that Agreement. The lawsuit did not preclude him because my interpretation of the Purchase Agreement was that the McNultys were not offering a warranty deed. The sale was to be with no warranties, and so the lawsuit would not have precluded the quitclaim deed which would resolve it. Further, that Mr. Johnston had not taken the necessary steps required to be ready, willing, and able to consummate the Purchase Agreement on May 24th when the 180 days would expire.

The court further awarded Mercy damages in the amount of $3283.50 plus interest and ordered in specific performance that the McNultys deliver possession of the property to Mercy by March 1, 2014. Johnston appeals the court's granting of the motion for directed verdict on Mercy's request for declaratory judgment that his right of first refusal was unenforceable.

---

[4] We note that although Loyola McNulty joined the motion for directed verdict on the issue of enforceability of the right of first refusal, Martin McNulty joined Johnston's resistance. His attorney represented that Martin simply wanted the building sold and it was his understanding Johnston properly exercised his right of first refusal.

Mercy and Loyola made a second motion for directed verdict on the question of the formation of the right-of-first-refusal agreement. Loyola previously had raised issues that Martin fraudulently created the right of first refusal in order to prevent the sale of the property. Under the terms of their dissolution decree, Loyola is entitled to half the proceeds of the sale. Martin neither joined nor resisted Mercy and Loyola's motion regarding the formation of the agreement.

## II.     STANDARD OF REVIEW.

We review the district court's ruling on a motion for directed verdict for correction of errors at law.  *Hook v. Trevino*, 839 N.W.2d 434, 439 (Iowa 2013). "A directed verdict is required only if there was no substantial evidence to support the elements of plaintiff's claim."  *Pavone v. Kirke*, 801 N.W.2d 477, 487 (Iowa 2011) (internal citations and quotations omitted).  "Evidence is substantial when reasonable minds would accept the evidence as adequate to reach the same findings.  *Id.* (internal quotations and citations omitted).  Where reasonable minds could differ on an issue, directed verdict is improper and the case must go to the jury."  *Id.*  We view the evidence in the light most favorable to the nonmoving party and take into consideration all reasonable inferences that could be fairly made by the jury.  *Id.*

## III.    ANALYSIS.

Johnston contends the district court erred in granting the motion for directed verdict on Mercy's declaratory judgment claim based on his failure to complete the purchase agreement.  He contends a jury could have found he was prevented from completing the purchase because he could not have acquired marketable title in the context of Mercy's lawsuit against the McNultys.[5]

---

[5] Johnston's second contention on appeal is that "[t]he district court erred in granting a directed verdict because there was a meeting of the minds and consideration for the right of first refusal."  The district court specifically enumerated on the record its reasoning for granting the motion for directed verdict.  Those grounds are recited above and do not include any consideration related to a meeting of the minds or the existence of consideration in the creation of the right-of-first-refusal agreement.  As this was not a ground on which the court made its decision, we do not consider Johnston's second contention on appeal.  *See Meier v Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

At trial, Mercy argued it was entitled to a directed verdict on its declaratory judgment petition because Johnston was not ready, willing, and able to purchase the property at any time on or before May 24 (180 days after exercising his option) as the right-of-first-refusal agreement required. Johnston argues he was ready, willing, and able, but he could not purchase the property because he was entitled to a merchantable title and Mercy's lawsuit rendered the title unmerchantable.[6]

On November 29, 2010, when Johnston decided he intended to exercise his right of first refusal to purchase the property, Johnston's attorney sent the following notice to Mercy and the McNultys:

> Charles Johnston hereby notifies all parties hereto that he does exercise his Right of First Refusal Purchase 601 8th Avenue, Cedar Rapids, Iowa, a/k/a the Postal Annex, and associated parking lots, pursuant to the above agreement and notice, and attached hereto (and incorporated here) is a copy of the Offer to Buy and Acceptance dated 8/30/10, which he agrees to perform, with the exception of the date of possession and any other conflicting terms.

Johnston argues this notice meant he was "stepping into the shoes" of Mercy and agreeing to perform the terms and conditions described in the August 31 purchase agreement between Mercy and the McNultys. He asserts because he was "stepping into Mercy's shoes," he was entitled to purchase the property "free

---

[6] The general rule is that "the time prescribed in the agreement for exercise of an option is of the essence and, if the option is not exercised within the time limit, all rights of the optionee stand forfeited without notice." *Figge v. Clark*, 174 N.W.2d 432, 434-35 (Iowa 1970). "[I]f the optionee is prevented from performing by obstructive and delaying tactics on the part of the optionor so as to prevent timely performance, payment or tender, then the delay is excused." *Id.* The same rule should apply to a right of first refusal.

and clear of liens, restrictions and encumbrances," as was Mercy.[7]  He further asserts the pending lawsuit which Mercy brought against the McNultys placed a "cloud" on the title such that it was no longer "free and clear," as the McNultys warranted.  Therefore, he concludes, his failure to complete the purchase was excused because the McNultys prevented his performance by clouding the title with the Mercy-McNulty purchase agreement and subsequent lawsuit with Mercy.

We note that a right of first refusal "limits the right of the owner to dispose freely of its property by compelling the owner to offer it first to the party who has the first right to buy.  Nor may the owner accept an offer made by a third party." 17 Williston on Contracts § 67:85 (4th ed.) (2014).  When a seller breaches the right of first refusal, specific performance is a possible remedy.  *Id.*  At least one court has found, where damages are adequate, specific performance may be denied.  *See Miller v. LeSea Broad., Inc.*, 87 F.3d 224, 230-31 (7th Cir. 1996).

Citing the above-quoted language from *Cappel v. Potts*, Johnston further argues the title was no longer merchantable because there was litigation associated with it.  However, *Cappel* also explains that:

> [M]erchantable title does not mean a title free from every technical defect . . . .  [T]he test is whether a man of reasonable prudence, familiar with the facts and apprised with the questions of law involved, would, in the ordinary course of business, accept such a title as can again be sold to a reasonable purchaser.

185 N.W. at 151.  We need not decide whether Johnston was entitled to merchantable title as we are not persuaded title was rendered unmerchantable

---

[7] Johnston cites Black's Law Dictionary's definition of "first refusal": a "right to elect to take specified property at the same price and on the same terms and conditions as those contained in a good faith offer by a third person if the owner manifests a willingness to accept the offer."  Black's Law Dictionary (6th ed. 1994).

by Mercy's lawsuit, primarily because the litigation involved was a breach-of-contract claim by Mercy against the McNultys. Thus, neither Johnston nor the title itself was exposed to litigation in any sense. Mercy did not state any claim of title to the land except to the extent that the court found Johnston's claim was invalid. Johnston further asserts the August 31 purchase agreement transferred "equitable title" to Mercy, which also constituted a "cloud" on title. When equitable title is transferred, the vendor and vendee stand in the position of "trustees" for the other, but legal title does not pass until the vendee tenders payment of the purchase money. *See* 17 Williston on Contracts § 50:42. The rights and obligations acquired upon transfer of equitable title exist only between the vendor and vendee (except with respect to devisees and heirs). *See* 17 Williston on Contracts § 50.43. Johnston cites no authority in support of the assertion that the transfer of equitable title between a vendor and a vendee clouds title with respect to a third-party holder of a right of first refusal, and we find this argument unpersuasive. Mercy and the McNultys had cancelled their closing date by the time Johnston exercised his right of first refusal. Further, if we adopted Johnston's view, any time Johnston would be notified of an impending purchase agreement concerning the property, the transfer of "equitable title" would be a "cloud" impeding his exercise of the right.

Even if title was rendered unmerchantable, the right-of-first-refusal agreement specifically states, "No warranties will be made for the property." It further states, "This is strictly an 'as is' purchase subject to any lease in effect at that time." Johnston contends the "as is" language indicates the lack of

warranties referred only to the condition of the building. The language of the agreement does not support that conclusion. A plain reading indicates the agreement contemplated no warranties of any kind. Furthermore, the notice of intent to exercise the right of first refusal Johnston sent to Mercy and the McNultys specifically states Johnston agreed to perform the terms of the Mercy-McNulty contract, "with the exception of the date of possession and any other conflicting terms." The inclusion of the warranty of clear title would have been a conflicting term. Johnston cannot, by exercising his right of first refusal, improve the terms of the agreement he earlier made with the McNultys.

Finally, Johnston himself failed to perform on the purchase agreement. "When an option requires tender of payment, it is not exercised unless payment is tendered before the option expires." *Lyon v. Willie*, 288 N.W.2d 884, 888 (Iowa 1980). We see no reason the same tender requirement should not apply to the right of refusal in this case. The right-of-first-refusal agreement further provides, "This agreement will be in effect until Mr. Johnston withdraws or does not take action during the time period indicated." Further, a buyer cannot complain of a breach of a purchase agreement until he or she has performed the obligation of tendering payment. *See Waters v. Pearson*, 144 N.W. 1026, 1031 (Iowa 1914). Johnston points to no facts in the record that indicate he was ready, willing, and able to purchase the property on May 24, other than his testimony as to his net worth and that he had made large purchases from Martin McNulty in the past. The record shows he spoke to a bank and took some steps to make a § 1031 exchange but he did nothing more. Johnston did not take the

necessary action to purchase the property during the 180-day period the agreement allowed him.

On our examination of the record, we conclude the district court correctly determined the right-of-first-refusal agreement was not enforceable against the McNultys because Johnston failed to complete the purchase pursuant to its terms. No action of the McNultys excused Johnston's failure to do so and a reasonable jury could not find the McNultys responsible for a breach of the right-of-first-refusal agreement. Accordingly, the court did not err in granting the directed verdict in favor of Mercy on its declaratory judgment claim that the right-of-first-refusal agreement was unenforceable.

## IV. CONCLUSION.

We find the McNultys did nothing to prevent Johnston from completing the purchase within the required timeframe. Rather Johnston was not ready, willing, and able to complete the purchase pursuant to the terms of the right-of-first-refusal agreement. Accordingly, the district court did not err in granting a motion for directed verdict on Mercy's declaratory judgment claim. We affirm.

**AFFIRMED.**