# IN THE SUPREME COURT OF IOWA

No. 09–0500

Filed September 23, 2011

**IN RE THE DETENTION OF
HAROLD JOHNSON,**

**HAROLD JOHNSON,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Story County, William J. Pattinson, Judge.

Sexually violent predator contends the district court erred in denying his discharge from civil commitment because the State failed to conduct his final hearing within the sixty-day timeframe provided in Iowa Code section 229A.8(5)(*e*) (2009). **DECISION OF COURT OF APPEALS VACATED AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Michael H. Adams, Assistant Public Defender, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines and Susan Krisko, Assistant Attorneys General, for appellee.

**ZAGER, Justice**.

On further review we must determine whether Iowa Code section 229A.8(5)(*e*) (2009) entitles a sexually violent predator (SVP) to be discharged from civil commitment if the district court does not commence a final hearing within sixty days of the court's determination that a final hearing is required. We find section 229A.8(5)(*e*) requires the district court to conduct the final hearing within sixty days, but the court's failure to conduct a hearing within sixty days entitles an SVP to civil remedies, not discharge. We therefore vacate the decision of the court of appeals and affirm the district court's order denying discharge.

## I. Background Facts and Proceedings.

On July 13, 2001, Harold Johnson was determined to be an SVP and was civilly committed pursuant to Iowa Code chapter 229A. In 2006, Johnson underwent his annual review to determine whether facts existed to warrant a final hearing to adjudicate whether Johnson still possessed a "mental abnormality" that predisposed him to commit sexually violent offenses. The district court determined Johnson presented no competent evidence that warranted a final hearing. After the adverse determination, Johnson filed a petition for writ of certiorari with this court, which we granted. We determined Johnson presented evidence which would permit a fact finder to reasonably conclude Johnson's mental abnormality had changed and, that if discharged, he was not likely to engage in sexually violent acts. We therefore ordered the district court to conduct a final hearing for Johnson. *See Johnson v. Iowa Dist. Ct.*, 756 N.W.2d 845, 851 (Iowa 2008). Procedendo was issued on November 3, 2008.

On January 2, 2009, sixty days after procedendo was entered, the parties participated in a teleconference to schedule Johnson's final

hearing.  The district court scheduled Johnson's final hearing for February 24, 2009.  During the teleconference, Johnson noted he would be bringing a motion for discharge or sanctions on speedy trial grounds.  Johnson filed his motion for discharge or sanctions on January 8, 2009.  The motion asked for Johnson to be discharged or, alternatively, for the State to be restricted from presenting expert evidence at Johnson's final hearing.  On February 2, 2009, the district court held a hearing on the motion.  Johnson asserted Iowa Code section 229A.8(5)(*e*) required his final hearing to be commenced within sixty days of the determination he was entitled to a hearing.  Additionally, because his final hearing was not held within the sixty-day time limit, Johnson argued he was entitled to be discharged from the SVP civil commitment program.  The district court denied Johnson's motion for discharge or sanctions, finding there was no statutory consequence for failing to meet the final hearing scheduling deadline outlined in Iowa Code section 229A.8(5)(*e*) and, therefore, any breach did not strip the district court of its jurisdiction.

At Johnson's final hearing, the jury concluded Johnson still suffered a mental abnormality that predisposed him to commit sexually violent offenses.  The district court entered judgment denying Johnson's discharge.  Johnson filed a timely notice of appeal.  He appealed the district court's order denying his motion for discharge or sanctions.  The appeal was transferred to the court of appeals.  The court of appeals affirmed the district court's order finding Iowa Code section 229A.8(5)(*e*) was directory rather than mandatory.  Additionally, the court of appeals concluded the provision does not require a trial to be conducted within sixty days, only that the trial be scheduled within sixty days.  Johnson petitioned for further review, which we granted.

## II. Standard of Review.

Johnson asks us to determine the meaning of Iowa Code section 229A.8(5)(*e*). We review questions of statutory interpretation for correction of errors at law. *In re Det. of Fowler*, 784 N.W.2d 184, 187 (Iowa 2010).

## III. Issues.

We are confronted with two related, but divergent, issues. First, we must determine whether the district court violated Iowa Code section 229A.8(5)(*e*) when it failed to commence Johnson's final hearing within sixty days. If we find a violation, then we must determine whether section 229A.8(5)(*e*) entitles Johnson to discharge.[1]

## IV. The Sixty-Day Requirement.

Iowa Code section 229A.8(5)(*e*) states:

> *e.* The burden is on the committed person to show by a preponderance of the evidence that there is competent evidence which would lead a reasonable person to believe a final hearing should be held to determine either of the following:

> (1) The mental abnormality of the committed person has so changed that the person is not likely to engage in predatory acts constituting sexually violent offenses if discharged.

> (2) The committed person is suitable for placement in a transitional release program pursuant to section 229A.8A.

> If the committed person shows by a preponderance of the evidence that a final hearing should be held . . . *the court shall set a final hearing within sixty days* of the determination that a final hearing be held.

---

[1]Johnson filed a "Motion for Discharge or Sanctions," asking for discharge or, in the alternative, for sanctions against the State to prevent the State from offering expert evidence against Johnson at the final hearing. On appeal, Johnson has only argued and asked for discharge; Johnson has not referred to his sanctions request. Therefore, we will not address whether the district court erred in denying Johnson's requested sanctions.

Iowa Code § 229A.8(5)(*e*) (emphasis added). The precise issue we seek to resolve is whether the phrase "shall set a final hearing within sixty days" requires the district court to commence the final hearing within sixty days or whether it merely requires the district court to schedule the final hearing within sixty days.

When interpreting a statute, we attempt to ascertain the legislature's intent in enacting the law. *Fowler*, 784 N.W.2d at 187. "We do not search for meaning beyond the express terms of a statute when the statute is plain and its meaning is clear." *Id.* (quoting *Cubit v. Mahaska Cnty.*, 677 N.W.2d 777, 781–82 (Iowa 2004)) (internal quotation marks omitted). The ordinary and common meaning of the statute's words is dependent on the context and setting in which they are used. *State v. Wiederien*, 709 N.W.2d 538, 541 (Iowa 2006). If the plain language is not clear, then we must review "the statute's 'subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of the various interpretations.' " *Cox v. State,* 686 N.W.2d 209, 213 (Iowa 2004) (quoting *State v. Albrecht,* 657 N.W.2d 474, 479 (Iowa 2003)).

We begin our analysis by considering the meaning of the phrase "shall set a final hearing within sixty days." The word "set" has various meanings depending on its context. For example, when a person states they will "set a fire" the person is using the word "set" to mean "start" or "commence," but a person that states they must "set a wedding date" may use the word "set" to mean "schedule." *Merriam-Webster's Collegiate Dictionary* 1138–39 (11th ed. 2004). The legislature instructed the district court to "set a final hearing within sixty days," and within the context of lawyers, courts, and common scheduling practices, "set" is interchangeably used to mean both "schedule" and "conduct." Therefore,

dissecting every possible dictionary or grammatical use of the word "set" is not necessary.

However, the legislature's instruction to the district court to "set a final hearing within sixty days" carries little utility if we construe the provision to merely require the district court to schedule a hearing within sixty days. The legislature added this sixty-day requirement as part of a comprehensive amendment to chapter 229A in 2002 which increased the procedural protections given to civilly committed SVPs. *See* 2002 Iowa Acts ch. 1139, §§ 1–27 (codified as amended in Iowa Code ch. 229 (2003)). If "set" is construed to only require the district court to schedule a hearing within sixty days, then little protection is provided to the SVP because the provision would permit the district court to actually conduct the final hearing within any timeframe. Such a construction makes section 229A.8(5)(*e*) constructively surplus language and is inconsistent with the legislative purpose of the provision.

We conclude section 229A.8(5)(*e*) requires the district court to commence a final hearing within sixty days of the determination a final hearing is required. Johnson was not provided a final hearing within sixty days in violation of his statutory rights.

**V. Remedy.**

After determining Johnson's final hearing should have commenced within sixty days, we must now determine what remedy Johnson is entitled to. Johnson's proper remedy is a matter of statutory construction. *Fowler*, 784 N.W.2d at 188–90. In ascertaining the legislature's intent, we look to the language of the statute, its nature and objects, legislative history, statutory context, and the consequences that would flow from each construction. *Id.* (discussing the history and development of Iowa's SVP act); *see also Cox*, 686 N.W.2d at 213. We

note chapter 229A is a civil statute, intended to protect the public through confinement and treatment of SVPs. *Atwood v. Vilsack*, 725 N.W.2d 641, 651–52 (Iowa 2006). Because confinement creates a risk of liberty deprivation, however, the legislature included procedural protections in the SVP civil commitment act to ensure civil commitment is guided by definite procedures and standards. *Fowler*, 784 N.W.2d at 188.

In *Fowler*, we confronted what remedy a respondent was entitled to if the State failed to prosecute its SVP civil commitment action within the ninety-day time limit required under Iowa Code section 229A.7(3) (2007).[2] *Id.* at 185. We held a violation of section 229A.7(3) entitled Fowler to dismissal of his civil commitment action. *Id.* at 190–91. Our reasoning emphasized the legislature included procedural protections to guard against potential liberty deprivations, and we analogized the ninety-day period to other bright-line prosecutorial deadlines like speedy trial statutes that ensure fairness to the accused in a criminal context. *Id.* at 189–90. We noted chapter 229A's constitutionality significantly relies upon the procedural protections accompanying its civil commitment framework. *Id.* at 188–90. Implicit in our reasoning was our concern for the respondent's liberty interest when the respondent faces indefinite SVP civil prosecution. Construing section 229A.7(3) to provide the respondent with a bright-line, speedy trial right mitigated the harm to a respondent's liberty and provided the respondent prophylactic protection against due process violations. Our statutory construction in *Fowler* was derived, at its core, from our belief "that the legislature

---

[2]Iowa Code section 229A.7(3) requires the State to prosecute SVP civil commitment actions "[w]ithin ninety days after . . . the order waiving the probable cause hearing or completion of the probable cause hearing."

intended to create a bright-line [speedy trial] rule to avoid any due process problems."[3]  *Id.* at 189.

We do not find Johnson faces the same risk of liberty deprivation as Fowler.  Therefore, the need to construe section 229A.8(5)(*e*) to contain prophylactic due process protections is not apposite.  Johnson is not a respondent facing civil commitment prosecution.  He is an adjudicated SVP.  *See* Iowa Code § 229A.7(5) (2009) (stating a unanimous jury must find the respondent to be an SVP beyond a reasonable doubt at the civil commitment trial).  He showed, however,

> by a preponderance of the evidence that there is competent evidence which would lead a reasonable person to believe [his] mental abnormality . . . has so changed that [he] is not likely to engage in predatory acts constituting sexually violent offenses if discharged.

Iowa Code § 229A.8(5)(*e*)(1).  Section 229A.8(5)(*e*), thus, entitled him to a final evidentiary hearing within sixty days to readjudicate his SVP status.

Constitutional framers, legislatures, and courts have been peculiarly sensitive to an accused's liberty rights.[4]  Our society has long

---

[3]*Fowler* analyzes whether section 229A.7(3) imposes a mandatory or directory duty.  *Fowler*, 784 N.W.2d at 189–90.  The parties in this appeal also briefed arguments as to whether section 229A.8(5)(*e*) imposed a mandatory or directory duty, and the effect such a construction would have on the district court's jurisdiction to conduct a final hearing.  The mandatory/directory analysis concerns whether a governmental agency's failure to comply with a statutory duty will invalidate the governmental action to which the statute applies.  *See Taylor v. Dep't of Transp.*, 260 N.W.2d 521, 522–23 (Iowa 1977) (applying dichotomy to department of transportation revocation hearing).  The dichotomy does not apply to courts in setting trials or hearings as courts are bound by statutes, rules, and due process in making such determinations.  While *Fowler* employed this dichotomy, the analysis was not essential to resolving that case, nor is such an analysis necessary in reviewing section 229A.8(5)(*e*).  We decline to craft the remedy in this case based on a mandatory/directory dichotomy.  We instead will look at the extent to which due process and liberty principles are jeopardized as well as other familiar tools of statutory construction such as plain language, legislative history, and statutory context.

[4]The initial clause of the Sixth Amendment states, "In all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ."  The Supreme Court has noted the speedy trial right

valued speedy trial protections because such rules: (1) prevent undue and oppressive imprisonment before trial, (2) minimize the harm of public accusation, and (3) reduce risk that delay will harm the accused's ability to defend himself. *Smith v. Hooey*, 393 U.S. 374, 377–78, 89 S. Ct. 575, 577, 21 L. Ed. 2d 607, 611 (1969). But a person detained through a robust procedural and evidentiary proceeding, like the framework contained in chapter 229A, possesses less liberty sensitivities than an accused facing initial prosecution. *See, e.g., Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L. Ed. 2d 418, 430 (1995) (finding inmates only suffer liberty deprivation when subjected to "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life"). SVP detention, pursuant to adjudicated civil commitment, is not oppressive or punitive, but serves legitimate rehabilitative and public safety purposes. *In re Det. of Garren*, 620 N.W.2d 275, 280 (Iowa 2000) (noting detention of dangerous mentally unstable persons "has been cited as a classic example of nonpunitive detention"). Moreover, section 229A.8(5)(*e*) applies only to adjudicated SVPs; the anxiety or harm typically derived from public accusation and prosecution is not present when the respondent is already fixed to the SVP classification. Simply, an initial civil commitment prosecution

---

has its roots at the very foundation of our English law heritage. Its first articulation in modern jurisprudence appears to have been made in Magna Carta (1215), wherein it was written, "We will sell to no man, we will not deny or defer to any man either justice or right."

*Klopfer v. North Carolina*, 386 U.S. 213, 223, 87 S. Ct. 988, 993, 18 L. Ed. 2d 1, 8 (1967) (quoting Magna Carta, translated in Edward Coke, *The Second Part of the Institutes of the Laws of England* 45 (Brooke, 5th ed. 1797)). Article I, section 10 of the Iowa Constitution also provides, "In all criminal prosecutions . . . the accused shall have a right to a speedy . . . trial." The United States Congress has passed speedy trial statutes to provide further protection to the accused, 18 U.S.C. §§ 3161–3174, (2006) and Iowa Rule of Criminal Procedure 2.33 provides a right to a trial within ninety days of indictment.

imposes a greater risk of liberty deprivation than readjudication after an SVP is civilly committed.[5]

Since post-civil commitment readjudication does not create the same threat to liberty deprivation as an initial civil commitment prosecution, there is less reason to believe the legislature intended section 229A.8(5)(*e*) to provide prophylactic due process protection through discharge or dismissal. Instead, we find chapter 229A's strict guidelines for releasing adjudicated SVPs, and the legislature's stated purpose in enacting chapter 229A, confirm the legislature did not intend for SVPs to be released when the court does not comply with section 229A.8(5)(*e*)'s sixty-day requirement.

Chapter 229A "narrowly circumscribes release of detainees." *Atwood*, 725 N.W.2d at 645. Section 229A.5B states, "A person who is detained pursuant to section 229A.5 or is subject to an order of civil commitment under this chapter shall remain in custody unless released by court order or discharged under section 229A.8 or 229A.10." Sections 229A.8 and 229A.10 only authorize discharge after an evidentiary hearing examining the SVP's suitability for discharge. Iowa Code §§ 229A.8, 229A.10. Chapter 229A does not contain any mechanism in which an SVP can be discharged without a final evidentiary hearing on the merits of the SVP's mental abnormality. We therefore think it is

---

[5]We are not suggesting adjudicated SVPs do not possess liberty due process interests. We have repeatedly stated, and we reiterate, the State's civil commitment of an SVP infringes upon the SVP's liberty interest, thereby entitling the SVP to due process of the law. *Swanson v. Civil Commitment Unit for Sex Offenders*, 737 N.W.2d 300, 308 (Iowa 2007); *In re M.T.,* 625 N.W.2d 702, 706 (Iowa 2001). For example, substantial delay of an adjudicated SVP's right to final hearing may run afoul of due process. Those facts are not before us, and Johnson has not argued a due process violation. We are simply observing that civil commitment prosecution raises a greater risk of impermissible liberty deprivation than does post-civil commitment readjudication.

unlikely the legislature intended discharge to be the remedy to accompany a violation of section 229A.8(5)(*e*)'s timeframe.

We also find the Supreme Court of Wisconsin's reasoning as to its legislature's intent, in an analogous case, to be persuasive. *State ex rel. Marberry v. Macht*, 665 N.W.2d 155, 163 (Wis. 2003). The court held the state's failure to conduct a timely, post-commitment initial reexamination in violation of its sexually-violent-person civil commitment statute did not entitle the respondent to discharge. *Id.* The court reasoned

> Chapter 980 provides that a person committed may be released on supervision or discharged from commitment only after a court finds that he or she is no longer a sexually violent person and that it is no longer substantially probable that he or she will commit acts of sexual violence. Release absent this substantive determination by a court would compromise both of Chapter 980's principal purposes— treatment and public protection—because, until a circuit court finds otherwise, the committed person remains in need of treatment and at high risk to reoffend.

*Id.* (citations omitted). Similarly, the Iowa legislature explained its purpose for enacting chapter 229A was to confine and rehabilitate dangerous predators:

> The general assembly finds that sexually violent predators' likelihood of engaging in repeat acts of predatory sexual violence is high and that the existing involuntary commitment procedure under chapter 229 is inadequate to address the risk these sexually violent predators pose to society.

Iowa Code § 229A.1. Releasing adjudicated SVPs without any substantive determination on their propensity to reoffend thwarts the legislature's public safety and rehabilitative goals in enacting chapter 229A. Construing a violation of section 229A.8(5)(*e*)'s timeliness requirement to entitle Johnson to discharge would run counter to the chapter's framework and the legislature's expressed purpose.

12

Section 229A.8(5)(*e*) does not entitle Johnson to discharge, but Johnson is not without a remedy. Johnson's remedy is the trial itself. Chapter 229A is a civil commitment statute. *Garren*, 620 N.W.2d at 283–86. Johnson has at his disposal all the remedies of a civil litigant. For example, Iowa Code chapter 661 authorizes persons to bring a mandamus action to compel an "inferior tribunal" to act pursuant to its legal duty. Iowa Code § 661.1. The Iowa rules of civil procedure provide additional appropriate remedies. Chapter 229A also infringes upon the SVP's liberty interest, thereby entitling the SVP to due process of the law. *Swanson v. Civil Commitment Unit for Sex Offenders*, 737 N.W.2d 300, 307–10 (Iowa 2007).

**VI. Disposition.**

The plain and ordinary meaning of Iowa Code section 229A.8(5)(*e*) requires the district court to make findings and to commence Johnson's final hearing within sixty days of the determination a final hearing is necessary. Johnson is not entitled to discharge as this is not a remedy the legislature provided for in the statute. Johnson was entitled to the remedies afforded a civil litigant. Johnson's final hearing was conducted in February 2009. A jury returned a verdict finding the State proved beyond a reasonable doubt Johnson still suffered from a mental abnormality that rendered him likely to reoffend. The district court entered judgment. We vacate the decision of the court of appeals and affirm the district court's judgment.

**DECISION OF COURT OF APPEALS VACATED AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except Mansfield, J., who takes no part.