# IN THE COURT OF APPEALS OF IOWA

No. 15-1250
Filed February 8, 2017

**ARLIN GEORGE RILEY,**
    Plaintiff-Appellee/Cross-Appellant,

vs.

**MATTHEW RILEY,**
    Defendant-Appellant/Cross-Appellee.
--------------------------------------------------------
**ARLIN GEORGE RILEY,**
    Plaintiff-Appellee/Cross-Appellant,

vs.

**DENISE RILEY,**
    Defendant-Appellant/Cross-Appellee.
_____

Appeal from the Iowa District Court for Adams County, John D. Lloyd, Judge.

Matt and Denise Riley appeal the judgment of the district court finding they engaged in elder abuse by financially exploiting Arlin Riley. Arlin Riley cross-appeals a portion of that ruling denying his request for the return of property. **APPEAL AFFIRMED; CROSS-APPEAL DISMISSED; AND REMANDED.**

Matthew G. Sease of Kemp & Sease, Des Moines, for appellants/cross-appellees.

Gina C. Badding of Neu, Minnich, Comito, Halbur, Neu & Badding, P.C., Carroll, for appellee/cross-appellant.

Heard by Mullins, P.J., and Bower and McDonald, JJ.

**MULLINS, Presiding Judge.**

Matt and Denise Riley appeal the judgment of the district court finding they engaged in elder abuse under Iowa Code chapter 235F (2015) by financially exploiting Matt's father, Arlin Riley. They argue Arlin was not a vulnerable elder within the meaning of chapter 235F, the district court improperly shifted the burden of proof to Matt and Denise to affirmatively establish they did not unduly influence Arlin, and the district court erred in finding Matt and Denise financially exploited Arlin. Arlin cross-appeals a portion of that ruling denying his request for the return of rental property and money he contends Matt and Denise withheld from him. Upon our de novo review, we affirm the court's ruling as to the issues raised in Matt and Denise's appeal. We determine the court's order was not final as to the issue's raised in Arlin's cross-appeal; thus, we treat the cross-appeal as an application for interlocutory appeal, deny the application, and dismiss the cross-appeal. We remand to the district court for consideration of appellate attorney fees.

## I.      Background Facts and Proceedings

Arlin's wife of thirty-seven years, Connie, died in July 2012. Arlin and his wife have two children: Matt, who is married to Denise, and Katie. Following Connie's death, Arlin experienced depression and his children became concerned with his ability to handle his finances.

On December 14, 2012, Arlin, accompanied by Matt and Denise, went to a local bank over forty-five minutes away from the town in which they all lived and withdrew $80,000 in cash from Arlin's savings account. Matt drove separately and sat outside the bank in his vehicle armed with a weapon for protection, while

Arlin and Denise went inside the bank to withdraw the money. On December 21, Arlin, Matt, and Denise again went to the bank and withdrew $80,000 in cash from Arlin's savings account. Matt brought a weapon along for protection on this occasion too because of the large amount of cash Arlin was withdrawing and the distance they had to travel home with the money. At the hearing on the petition, Arlin testified he withdrew the money so that it could be used to invest in real estate rental properties because "[c]ash talks." He further testified that on both occasions after arriving at Matt and Denise's home, he placed the cash in Matt and Denise's personal safe because he did not have a safe at his home. Matt and Denise dispute this evidence and both testified at the hearing that on both occasions, Arlin left their home with the cash and never placed it in their safe. Matt and Denise testified they never saw the money and did not know what Arlin did with it.

In early January 2013, certificates of organization were created for 322 Carroll Street LLC and 222 State Street LLC, with Denise listed as the registered agent for both companies. On January 28, Matt prepared a written power of attorney using a form from the Iowa State Bar Association, providing Matt the power to facilitate the acquisition of real estate for investment purposes, access Arlin's bank accounts, and make gifts—including "mak[ing] gifts of [Arlin's] property to himself." Arlin executed the form, and Denise notarized it. The power expired by its terms in September 2013.

On February 4, 2013, Arlin transferred $60,000 from his savings account to his checking account. He used $28,996.89 to purchase a property located at 322 Carroll Street in Boone. Arlin acquired the property in his name but

subsequently transferred it to 322 Carroll Street LLC through a quit claim deed prepared and notarized by Matt. On February 8, Arlin used $29,108.20 to purchase a second property located at 222 State Street in Boone. The property was acquired in the name of 222 State Street LLC.

In March, Matt created a certificate of organization for 2811 Warford LLC. Matt was listed as the organizer, and Denise was again listed as the registered agent.

On April 18, a document entitled "RECEIPT" was allegedly created by Arlin, stating his intention to gift all of his stocks in 322 Carroll Street LLC, 222 State Street LLC, and 2811 Warford LLC to Denise.[1] The document further provided Arlin was "transfer[ring] my title of the old Dodge truck" to Denise and gifting $150,000 and his 1997 Ford F150 truck to Katie. The document also stated Arlin would be putting his home in Granite City, Illinois, and his shares of a farm he owned with his two brothers into a trust for the benefit of Matt and Katie. The document stated the gifts "will be completed before my 67th birthday."

On April 22, Arlin purportedly signed the minutes of special meeting for 322 Carroll Street LLC and 222 State Street LLC, transferring all of his stocks in the two companies to Denise. Matt prepared all of the documentation for the transfers, and all transfers were completed without consideration. Arlin testified at the hearing he had never seen these documents before Matt and Denise's attorney provided them to him. He further testified the signatures on these documents were not his.

_____

[1] The document provided Arlin was "gifting [his interest in the LLCs] to Denise due to [his] fear of custody issues that are constantly going on with [Matt's child from a prior relationship]."

On April 30, Arlin purchased a third property located at 2811 Warford Street in Perry in the name of 2811 Warford LLC. Arlin provided $37,610.72 for a down payment on the property and became personally liable on the loan note[2] in the amount of $138,750. Arlin testified he had to finance the purchase because his "credit was better than my son's."

The following day, on May 1, Arlin purportedly signed the minutes of special meeting for 2811 Warford LLC, transferring all of his stocks in the company to Denise.[3]

In early June, Matt created a certificate of organization for 1402 Willis LLC. Matt was listed as the organizer and Denise was listed as the registered agent.

On July 3, Matt and Denise purchased a property located at 1402 Willis Avenue in Perry through 1402 Willis LLC. Although Matt and Arlin had previously had conversations about Arlin financing the purchase of the property, no evidence was presented indicating Arlin ever held an interest in this LLC or in the real estate property located at this address. Matt and Denise ultimately purchased the property using a cashier's check in the amount of $45,600 that Matt had purchased on June 12. Matt and Denise provided no explanation at the hearing on the petition for the source of the cash used to purchase this property

---

[2] Matt signed the mortgage securing the note as manager of 2811 Warford LLC.
[3] The record is unclear whether this transfer resulted in Denise owning a 100% interest in the LLCs transferred to her. Arlin testified at the hearing on the petition that he and Matt had agreed Arlin would retain a 99% interest in 2811 Warford LLC, 222 State Street LLC, and 322 Carroll Street LLC, while Matt would receive a 1% interest in the three LLCs to compensate him for his management of the properties. Matt and Denise both testified at the hearing Matt did not own any interest in the LLCs owning the properties or in the properties themselves.

but denied it came out of the $160,000 Arlin had withdrawn from the bank in December 2012.

On August 2, Matt took Arlin for a pretreatment assessment with a counseling provider "due to concerns regarding his father's impulsive and irrational choices, unresolved grief over the loss of his wife, and symptoms of depression." Arlin completed therapy with his counselor in March 2014.

On August 5, 2013, Matt, using power of attorney, withdrew $3232.25 from his father's checking account after learning Arlin had sent a total of $30,000 of the life insurance proceeds Arlin had received after his wife's death to someone he did not know overseas.[4] As a result of the withdrawal, Arlin's account incurred eight overdraft fees in the amount of $35, plus a return item fee in the amount of $35, totaling $315 in fees. On August 12 and 13, Denise deposited $750 into Arlin's account, for a total deposit of $1500. On October 23, Denise withdrew $2040 in cash from her business checking account.[5] Matt and Denise presented evidence of a document purportedly signed by Arlin acknowledging receipt of $2040 in cash from Matt.

---

[4] It is unclear from the record when the transfers started or ended, how many transfers occurred, how much each transfer was for, or exactly how much money was sent in total. There was testimony that Arlin started sending money in late 2012 and continued sending it in increments—despite Matt and Katie having told Arlin it was a scam—until August 2013 when Matt discovered the transfers had continued and withdrew the money.

[5] There is no evidence in the record other than Denise's testimony to show the money withdrawn from Arlin's account was deposited into this account. Denise also testified she did not have checks for this account to transfer the funds back to Arlin and did not use other forms (e.g., cashier's checks, money orders, etc.) because "they charge." Thus, she made direct transfers between the accounts and ultimately withdrew the cash because the amount of money and number of transfers were restricted.

On June 13, 2014, Arlin met with his attorney who represented him at the hearing on the petition, to review the trust prepared by a different attorney.[6] On August 26, Arlin called the attorney who had prepared the trust requesting information from Matt regarding the four LLCs at issue.

In September 2014, a recorded phone call between Katie and Matt took place. During the phone call, Katie questioned Matt about information on the LLCs at issue and why he refused to provide information and an accounting regarding the LLCs to Arlin. Katie was under the impression Arlin still intended to put the LLCs owning the rental properties into a trust and needed information from Matt in order to do so. Matt stated Arlin was "a day late and a dollar short on getting it done" and also stated he had told Arlin to scratch the trust idea. Matt told Katie that Arlin did not have any ownership interest in the LLCs but did not tell her the LLCs had been transferred to Denise in 2013. Matt also told Katie he had control over their mother's money and would "dictate what happens" with it. Matt repeatedly stated he believed Arlin was mentally incompetent and unable to control his own finances. Katie told Matt she believed Arlin was competent and capable of handling his finances since he had completed mental-health counseling six months before, and she was sure Arlin's counselor would say he was competent to take care of himself. Katie stated she thought it would be hard

---

[6] It is unclear from the record when Arlin first met with the attorney about creating a trust. Arlin testified at the hearing he could not recall when he discussed creating a trust to put the four rental properties, the farm shares, and the house in Granite City into. Katie testified the family discussed putting the four rental properties, the Granite City house, and the farm shares into a trust "right at the beginning—oh, right after my mom passed away." Denise testified the meeting to discuss the trust took place in 2012, and prior to the properties being purchased, they were supposed to go into the trust. Matt testified they had discussed putting the rental properties, the house in Granite City, and the farm shares into a trust.

for Matt to prove Arlin was not competent. Matt responded, "I think . . . it's going to be hard to prove that his money is his money then."

On November 17, Arlin's counselor wrote a letter stating: "It has been brought to this provider's attention that Arlin's competence is being put into question for legal decisions by his son, Matthew." The letter further provided: "It is in this writer's opinion that Arlin, is in fact, competent to all of his legal and non-legal affairs. Arlin is capable of making sound decisions and judgments regarding any and all entities in his life." The letter also stated: "It is in this writer's opinion that the discord between Arlin and Matthew, have caused Matthew to make allegations regarding his father's mental capabilities regarding legal endeavors that they may share together."

On February 2, 2015, Arlin's attorney sent a letter to Matt and Denise requesting an accounting of (1) the money Matt removed from Arlin's checking account in August 2013; (2) all activities Matt conducted while acting as attorney-in-fact for Arlin; (3) the $160,000 in cash Arlin entrusted to Matt and Denise; (4) the four real estate rental properties at issue; and (5) the assets of each of the four LLCs. The letter also requested copies of the operating agreements, the documentation evidencing Arlin's membership units, the minutes of meetings, the bank statements, and the tax returns for each of the four LLCs owning the four real estate rental properties.

On March 31, 2015, Arlin filed petitions for relief from elder abuse pursuant to Iowa Code chapter 235F against Matt and Denise. That same day, the district court entered a temporary protective order restraining Matt and Denise from having contact with Arlin and prohibiting them from exercising

control over Arlin's funds, benefits, property, resources, belongings, or assets. The court scheduled a hearing within the time prescribed by statute but later continued the hearing based upon an agreement by the parties. Arlin, Katie, Matt, Denise, and a representative from Arlin's bank testified at the hearing. Arlin testified he did not gift his interest in the three LLCs (322 Carroll Street LLC, 222 State Street LLC, and 2811 Warford LLC) to Matt or Denise. Arlin and Katie both testified Arlin did not gift any money to Katie pursuant to the April 18 document entitled "RECEIPT."[7] Arlin also presented evidence he retained the titles to the two trucks mentioned in the document.

Following the hearing, Arlin filed a posttrial memorandum requesting (1) a full accounting from Matt and Denise of their financial activities involving Arlin's money and property; (2) a return of $1732.25 withdrawn from Arlin's checking account by Matt, plus reimbursement of $315 in overdraft fees, for a total of $2047.25; (3) a return of $160,000 in cash that Arlin entrusted to the care of Matt and Denise; (4) a transfer to Arlin of Denise's interest in the four LLCs owning the four rental properties; and (5) payment of Arlin's attorney fees.

On June 18, the district court entered an order finding Arlin was a vulnerable elder within the meaning of chapter 235F and a victim of elder abuse "as a result of his age, relationship to [Matt and Denise,] and emotional turmoil following his wife's death." The court also found Matt "ha[d] wholly failed to bring forth any evidence affirmatively establishing that the transfers to Denise were freely and voluntarily done with full knowledge by [Arlin]," and "[a]lthough the

---

[7] Katie admitted Arlin had made at least five payments on her student loans in the amount of $350 each during 2013 but also stated Arlin had refused her request for $20,000 to pay off her loans.

transfers were to Denise rather than Matthew, Denise was fully complicit in the transfers and actively facilitated them." Thus, the court ordered Matt and Denise to transfer 2811 Warford LLC, 222 State Street LLC, and 322 Carroll Street LLC to Arlin. The court also ordered Matt and Denise to "provide a full and complete accounting of all income and expenses for each of the LLCs," as well as any copies of any rental agreements or terms of occupancy between the LLCs and any tenants, any rental deposits, and any documentation evidencing any obligation or debt of any of the LLCs. The court "restrained and enjoined [Matt and Denise] from taking any actions which might be detrimental to any of the LLCs, or adversely impact the ability of the LLCs to meet their financial obligations."

Additionally, the court found the $3232.25 Matt had withdrawn from Arlin's checking account in August 2013 appeared to have been "fully repaid." The court further noted Matt and Denise "may also have obtained control over cash of [Arlin's] in the amount of $160,000. The fact that this amount of cash was withdrawn in two equal withdrawals is clear. What is not clear is what happened to the money after that." Thus, the court ordered Matt and Denise to provide Arlin and the court "proof of the source of the cash used to purchase the real estate owned by 1402 Willis LLC." Further, the court ordered Matt and Denise to pay attorney fees to Arlin in the amount of $3656.20. Finally, "the court retained jurisdiction to enter such other and further orders as may be necessary to protect [Arlin] under chapter 235F."

Matt and Denise appeal; Arlin cross-appeals.

11

## II.     Jurisdiction

We must first decide a jurisdictional issue regarding the appealability of the district court's order.  The appeal and cross-appeal each assume there was a final judgment from which their appeals could be taken.  During oral arguments, each party argued the judgment was final, and the retention of jurisdiction by the district court was merely for enforcement or collateral purposes.  "Even though neither party has questioned our jurisdiction to hear and decide this case, we will sua sponte dismiss an appeal that is neither authorized by our rules nor permitted by court order."  *River Excursions, Inc. v. City of Davenport*, 359 N.W.2d 475, 477 (Iowa 1984).  We must determine whether the district court's order was a final judgment, appealable as a matter of right, or merely an interlocutory decision, which may be appealed only if permission is granted by the appellate court.  *See* Iowa Rs. App. P. 6.103(1), (3), 6.104.  "[A] final judgment conclusively adjudicates all of the rights of the parties."  *Rowen v. LeMars Mut. Ins. Co.*, 357 N.W.2d 579, 581 (Iowa 1984).  "A ruling is not final when the trial court intends to act further on the case before signifying its final adjudication of the issues."  *River Excursions*, 359 N.W.2d at 477.  "In other words, an order is interlocutory if it directs an inquiry into a matter of fact preparatory to a final decision."  *In re C.S.*, 516 N.W.2d 851, 857 (Iowa 1994).  Retention of jurisdiction of matters collateral to the subject matter of an appeal, or for purposes of enforcing a final order, does not render an order interlocutory.  *See Gutierrez v. Wal-Mart Stores, Inc.*, 638 N.W.2d 702, 707 (Iowa 2002).

In its ruling, the district court concluded Arlin was a vulnerable elder protected by chapter 235F and Matt and Denise committed elder abuse by

financial exploitation. The court ordered Matt and Denise to transfer ownership of and provide copies of rental agreements and other documents for 322 Carroll Street LLC, 222 State Street LLC, and 2811 Warford LLC to Arlin, within thirty days. With respect to those transfers, the court ordered Matt and Denise to provide a full accounting within sixty days. The court also entered a restraining order to prohibit Matt and Denise from taking any actions that might be detrimental to any of the LLCs and retained jurisdiction to enter "further orders as may be necessary to protect [Arlin] under chapter 235F."

The final provision might be considered a typical reference to subsequent enforcement or other purely collateral matters. But the district court also ordered Matt and Denise to submit proof of the source of the cash used to purchase the fourth property owned by 1402 Willis LLC within thirty days. In its findings of fact, the court found Matt and Denise purchased that fourth property through 1402 Willis LLC and further found "no indication that [Arlin] ever had an interest in this LLC or the subject real estate. [Matt and Denise] provided no explanation of the source of the cash used to purchase this property." The court also found Matt and Denise "may also have obtained control over cash of [Arlin's] in the amount of $160,000. The fact that this amount was withdrawn in two equal withdrawals is clear. What is not clear is what happened to the money after that." Further, in its ordered provisions, the court did not explicitly grant or deny Arlin's requested relief for 1402 Willis LLC. Instead, the district court ordered Matt and Denise to submit proof of the source of the cash for the purchase of the 1402 Willis Avenue property. It seems the court was seeking to determine whether there was a link between that source of cash and the "missing" $160,000. If the cash for the

purchase of 1402 Willis Avenue is ultimately linked to a portion of Arlin's $160,000, then it follows the district court was anticipating additional relief when it expressly retained jurisdiction to enter further orders; conversely, if no link is found, perhaps the court might enter a further order denying relief as to that property.

On our review of the record and the district court's order, we are not convinced the court's ruling "conclusively adjudicate[d] all of the rights of the parties." *Rowen*, 357 N.W.2d at 581. Instead, it appears as though the court entered a partial ruling on Arlin's claims, requested further evidence on Arlin's claims regarding the $160,000 in cash and the property located at 1402 Willis Avenue, and retained jurisdiction to enter further orders on those claims. *See In re C.S.*, 516 N.W.2d at 857; *River Excursions*, 359 N.W.2d at 477. The standard rule is that if the district court's order was not a final judgment but rather an interlocutory decision, the order is not appealable as a matter of right. *See* Iowa R. App. P. 6.103(1), (3); *see also Green v. Advance Homes, Inc.*, 293 N.W.2d 204, 207 (Iowa 1980).

That standard rule is not, however, without exception. *Green*, 293 N.W.2d at 207. For purposes of an appeal, a case "may have more than one final order." *Id.* "[I]t is possible for an order to put it beyond the power of the court to return the parties to their original positions even though it does not conclusively adjudicate all the rights of the parties." *Lyon v. Willie*, 288 N.W.2d 884, 886 (Iowa 1980). With regard to its finding that Arlin was a vulnerable elder within the meaning of chapter 235F, the district court's order was final. As to the ordered provisions governing the first three LLCs and their properties, the court's order

was final. Likewise, the restraining order for the protection of Arlin was final. Those provisions required no further rulings and the order did not anticipate any further rulings as to those provisions, except perhaps enforcement. On the other hand, the order from which the appeal and cross-appeal were taken did not conclusively adjudicate the rights of the parties as to 1402 Willis LLC or the propriety of the source of the funds used for the purchase of the property in that LLC. The district court did not finally adjudicate those issues and was apparently waiting for compliance concerning disclosure of the source of the funds for that property before finally adjudicating those issues. We determine this is the exceptional case in which there has been a final appealable order as to some issues, while the court retained jurisdiction to rule on remaining issues. *See id.* at 886–87. Accordingly, we will consider the issues raised by Matt and Denise on appeal as those were the subject of a final order.

But, because we determine the issues relating to 1402 Willis LLC and the source of funds for the purchase of the property of the LLC are the subject of interlocutory-ordered provisions, we will "proceed as though the proper form of review ha[s] been requested." Iowa R. App. P. 6.108; *see also In re Marriage of Denly*, 590 N.W.2d 48, 51 (Iowa 1999) ("An appeal improperly presented as arising from a final judgment is regarded as an application for interlocutory appeal."). Thus, we consider Arlin's cross-appeal as an application for interlocutory appeal. "As a general rule, . . . we sparingly grant interlocutory appeals." *Buechel v. Five Star Quality Care, Inc.*, 745 N.W.2d 732, 736 (Iowa 2008). "The possibility of fragmented appeals—one interlocutory, a second taken from the final judgment—should be avoided whenever possible." *River*

*Excursions*, 359 N.W.2d at 478. In determining whether we should grant an application for interlocutory appeal, we must consider (1) whether the order involves substantial rights, (2) whether the order "will materially affect the final decision," and (3) the interests of judicial efficiency. Iowa R. App. P. 6.104(2); *see also Denly*, 590 N.W.2d at 51.

In *Rowen*, the supreme court granted the application for interlocutory appeal finding the district court had "adjudicate[d] the particulars of equitable relief, leaving unsettled only issues that might arise during implementation of the plan." 357 N.W.2d at 582. Here, it appears the district court ordered Matt and Denise to submit additional evidence to aid the court in making a decision as to Arlin's remaining claims—his request for an accounting of the $160,000 he entrusted to Matt and Denise's care and an accounting of 1402 Willis LLC, which owns the property Arlin claims he provided the funds for purchase. "Piecemeal appeals often contribute little more to the judicial process than additional expense and delay." *Mason City Prod. Credit Ass'n v. Van Duzer*, 376 N.W.2d 882, 887 (Iowa 1985). We interpret the district court's order to defer a final adjudication of the 1402 Willis LLC and its property until Matt and Denise made the disclosure required per its order. Thus, we decline to grant Arlin's application for interlocutory appeal in the interests of judicial efficiency. *See id.* ("Even if we were to grant and decide this interlocutory appeal, we might well have to decide one or more later appeals of issues not yet addressed by the district court."). Accordingly, the cross-appeal is dismissed.

### III.    Standard of Review

The parties disagree on the applicable standard of review in this case. Matt and Denise contend the matter was tried in equity and is similar to claims brought under chapter 236 (the Domestic Abuse Act), and therefore, the standard of review is de novo.  *See Knight v. Knight*, 525 N.W.2d 841, 843 (Iowa 1994).   Arlin claims that because the district court ruled on objections as they were made at the hearing, the case was tried as a law action, and therefore, our review is for correction of errors at law.  *See Bacon ex rel. Bacon v. Bacon*, 567 N.W.2d 414, 417 (Iowa 1997); *Knight*, 525 N.W.2d at 843.   We look to the "pleadings, relief sought, and the nature of the case" to determine whether the case was legal or equitable.  *Passehl Estate v. Passehl*, 712 N.W.2d 408, 414 (Iowa 2006).   "We also consider 'whether the court ruled on evidentiary objections' as an important, although not dispositive, test of whether the case was tried in law or equity."  *Id.* (citation omitted).   Also, "a trial court generally issues a 'decree' in an equitable action and a 'judgment' in a legal action."  *Van Sloun v. Agans Bros. Inc.*, 778 N.W.2d 174, 178 (Iowa 2010).

In his petition, Arlin did not seek monetary damages, but rather, he sought an order refraining Matt and Denise from exercising control over his funds, benefits, property, resources, belongings or assets and requiring Matt and Denise to provide information about, a complete accounting for, copies of documents pertaining to, and the return of the four LLCs owning real estate properties located at 322 Carroll Street, 222 State Street, 2811 Warford Street, and 1402 Willis Avenue.   Arlin also requested the return of the remaining funds Matt removed from his checking account in August 2013, an accounting of all of

Matt's financial activities as Arlin's attorney-in-fact, and an accounting for and the return of the $160,000 Arlin claimed he entrusted to Matt and Denise. Thus, Arlin asked the court to use its equitable powers. *See Passehl*, 712 N.W.2d at 414. Furthermore, the relief authorized in Iowa Code section 235F.6(2) after a judicial finding of elder abuse and financial exploitation is primarily—if not completely— equitable in nature and is consistent with the relief requested by Arlin in this case.

Moreover, neither party filed a jury demand. The court's final decision was entitled "order" rather than "decree" or "judgment."[8] The court ordered Matt and Denise to transfer three of the four LLCs to Arlin, to provide information and an accounting for each of the three LLCs, to provide Arlin and the court proof of the source of the cash used to purchase the fourth property, and it further restrained and enjoined Matt and Denise from taking any actions that may harm the LLCs— all of which are equitable remedies. Additionally, although the district court here ruled on some evidentiary objections during the hearing, the court repeatedly overruled counsels' objections and did not exclude any evidence that would hinder our review of the record. *See id.*

We therefore conclude the case was tried in equity before the district court, and thus, our review of the record in this case is de novo. *See* Iowa R. App. P. 6.907. Accordingly, we give weight to the factual findings of the district

---

[8] We note the court ordered Arlin "shall have judgment against" Matt and Denise for attorney fees but conclude this order did not convert the equitable action into one at law. *See Van Sloun*, 778 N.W.2d at 178 ("[An] action is ordinarily classified according to what appears to be its primary purpose or controlling issue.").

court, especially its assessments of witness credibility, but we are not bound by them.  Iowa R. App. P. 6.904(3)(g).

To the extent the parties raise questions of statutory interpretation, our review is for correction of errors at law.  *See In re Det. of Johnson*, 805 N.W.2d 750, 753 (Iowa 2011).

## IV.    Analysis

Matt and Denise contend Arlin was not a "vulnerable elder" within the meaning of Iowa Code chapter 235F, the district court improperly shifted the burden of proof to Matt and Denise to affirmatively establish they did not unduly influence Arlin, and the district court erred in finding Matt and Denise financially exploited Arlin.

Chapter 235F allows a "vulnerable elder" to "seek relief from elder abuse by filing a verified petition in the district court."  Iowa Code § 235F.2(1).  Upon the filing of such a petition, the court shall hold a hearing at which the petitioner "must prove the allegation of elder abuse by a preponderance of the evidence." *Id.* § 235F.5(1).

Matt and Denise claim Arlin did not meet his burden in establishing he was a "vulnerable elder" as defined in Iowa Code section 235F.1(17).   Section 235F.1(17) provides, "'Vulnerable elder' means a person sixty years of age or older who is unable to protect himself or herself from elder abuse as a result of age or a mental or physical condition."   A vulnerable elder may prove the allegation of elder abuse through his own testimony.  *Id.* § 235F.5(6)(a).

It is undisputed Arlin was over the age of sixty at the time the three LLCs were transferred to Denise.  Arlin presented no evidence his age alone made him

incapable of protecting himself from elder abuse. Thus, we examine whether Arlin suffered from a mental or physical condition at the time of the transfers that made him unable to protect himself from elder abuse.

Following his wife's death in July 2012, Arlin became depressed. At the hearing on the petition, Arlin testified his depression lasted only six or seven months—until approximately December 2012 or January 2013. He admitted he was no longer depressed by the time he withdrew the $160,000 from the bank, acquired the properties at issue, transferred the LLCs owning the relevant properties to Denise, or when he sent a total of $30,000 to an unknown person overseas—a period of time spanning from December 2012 until early August 2013. However, Arlin also testified he "was receiving counseling at [the time he was depressed]." Matt took Arlin to a mental-health counselor in early August 2013—over a year after Arlin's wife died and after Arlin withdrew the money from the bank, acquired and transferred the properties, and sent the large sum of money overseas—due to Matt's concerns about his father's mental health.

Furthermore, throughout the record, there are many indications Matt and Denise both believed Arlin was unable to take care of his finances due to his mental-health status. In August 2013, Matt, acting as power of attorney for Arlin, withdrew $3232.25 from Arlin's checking account when he learned the total amount of money Arlin had sent overseas. Additionally, in a phone call between Matt and Katie in September 2014, Matt repeatedly stated he did not believe Arlin was mentally competent enough to handle his own finances. In text messages and at the hearing, Denise described Arlin as "out of control" and "irrational."

Matt and Denise claim a letter from Arlin's counselor clearly shows Arlin "was not and is not a vulnerable elder." Yet, the counselor wrote the letter in November 2014 in response to allegations by Matt that Arlin was incompetent. The letter noted Matt's concerns in August 2013 that Arlin was making "impulsive and irrational choices" as a result of his "unresolved grief over the loss of his wife, and symptoms of depression." The counselor then writes: "Arlin, is in fact, competent to all of his legal and non-legal affairs. Arlin is capable of making sound decisions and judgments regarding any and all entities in his life." Arlin's counselor wrote the letter a mere two months after the phone call occurred between Katie and Matt in which Matt claimed Arlin was mentally incompetent. It is clear the counselor's letter is in reference to Arlin's mental health at the time the letter was written in the fall of 2014 and was not referencing Arlin's mental health in 2013 before he began counseling. Matt apparently took actions on his belief Arlin was not capable of making sound decisions concerning his financial affairs. Arlin's testimony at the hearing raises serious doubt as to his own understanding of his financial decisions and participation. Based on our review of the evidence, we find Arlin was suffering from a mental condition at the time he withdrew $160,000 from the bank, acquired the three real estate properties located at 322 Carroll Street, 222 State Street, and 2811 Warford Street, and transferred the three LLCs holding these properties to Denise.

We next consider whether Arlin was unable to protect himself from elder abuse due to his mental condition. As relevant here, the code defines "elder abuse" to include "financial exploitation." Iowa Code § 235F.1(5)(a)(4). "Financial exploitation" occurs "when a person stands in a position of trust or

confidence with the vulnerable elder and knowingly and by undue influence, deception, coercion, fraud, or extortion, obtains control over or otherwise uses or diverts the benefits, property, resources, belongings, or assets of the vulnerable elder." *Id.* § 235F.1(8). A person "stands in a position of trust or confidence with the vulnerable elder" if the person is an "adult child[] or other relative by consanguinity or affinity[9] of the vulnerable elder." *Id.* § 235F.1(14). Section 235F.1(3) defines "coercion" as "communication or conduct which unduly compels a vulnerable elder to act or refrain from acting against the vulnerable elder's will and against the vulnerable elder's best interests." "Undue influence" is defined as "taking advantage of a person's role, relationship, or authority to improperly change or obtain control over the actions or decision making of a vulnerable elder against the vulnerable elder's best interests." *Id.* § 235F.1(16). Section 235F.1 does not define deception, fraud, or extortion.

Matt and Denise assert Arlin failed to prove by a preponderance of the evidence that they financially exploited him or that he was unable to protect himself from financial exploitation.[10] Matt and Denise rely on the April 18 document entitled "RECEIPT" as proof they did not financially exploit Arlin

---

[9] "The meaning of affinity is well established. It is the relationship which one spouse has because of the marriage to blood relatives of the other. 'By the marriage, one party thereto holds by affinity the same relation to the kindred of the other that the latter holds by consanguinity . . . .'" *State v. Allen*, 304 N.W.2d 203, 207 (Iowa 1981) (citation omitted). Thus, Denise is a person who "stands in a position of trust or confidence" with Arlin. *See* Iowa Code § 235F.1(14).

[10] Matt and Denise also assert they assisted Arlin in managing his finances in good faith. *See* Iowa Code § 235F.1(5)(b)(4). Arlin claims Matt and Denise failed to preserve error on this argument. The district court did not rule on this issue and neither party sought a ruling or clarification on the issue after the order was entered; therefore, it is waived. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

because he had intended to gift the three LLCs to Denise along with the Dodge truck and also intended to gift $150,000 and the Ford truck to Katie. Matt and Denise acknowledge Arlin only completed one of these transfers—and did so immediately, while the other transfers had not yet occurred at the time he filed the petition almost two years later—but argue Arlin still had time to complete the other three gifts.[11]

The record shows Matt convinced Arlin to use the life insurance proceeds Arlin received after his wife's death to invest in real estate rental properties. They agreed Arlin would have a 99% interest in the properties, while Matt would have a 1% interest to compensate him for his management of the properties. Arlin testified he never received any income from the properties before or after the transfer of the LLCs to Denise. Matt prepared certificates of organization for the LLCs at issue and listed Denise as the registered agent. He also prepared the form giving him power of attorney for Arlin, which allowed him to make gifts of his father's property to himself, and Denise notarized it. After Arlin purchased the property located at 322 Carroll Street, Matt prepared a quit claim deed to transfer the property into the LLC of the same name that he had formed. Arlin testified at the hearing he did not sign the April 18 document showing he intended to transfer 322 Carroll Street LLC, 222 State Street LLC, and 2811 Warford LLC to Denise. Matt prepared the minutes of special meetings for the three LLCs providing for the transfer of 100% of Arlin's interest in each LLC to Denise

---

[11] However, the record shows Arlin no longer had sufficient funds to make such a large gift to Katie. In December 2012, Arlin had $274,048.97 in his savings account and $10,200.13 in his checking. In April 2015, Arlin had a total of $6273.79 in his savings account and another $2551.95 in his checking.

without consideration; Arlin testified he did not sign these documents. He also presented evidence he did not complete any of the other transfers intended as gifts to his children or their spouses as provided in the April 18 document. Furthermore, the April 18 document provided Arlin intended to transfer his interest in 2811 Warford LLC to Denise before the closing on the property had even occurred and without regard to Arlin's personal liability on the loan note for the property in the amount of $138,750. Additionally, Arlin testified he did not file any gift tax returns.

At the time Arlin acquired and transferred the rental properties at issue, he was grieving the loss of his wife of thirty-seven years. He fell victim to a scam perpetrated by some unknown person abroad and ended up sending a total of $30,000 to someone he did not know. The record indicates Matt believed Arlin was unable to manage his own finances as a result of this incident, and so Matt, acting as attorney-in-fact, withdrew all of the remaining funds Arlin had in his account. In June 2014, Arlin met with his attorney about reviewing a trust he had had drafted to put the rental properties into, clearly indicating he still believed he was a member of the LLCs. In the September 2014 phone call between Matt and Katie, Katie asked Matt about the trust and why he would not provide Arlin with information about the LLCs so that Arlin could move forward with the trust. Matt told Katie that Arlin no longer had any interest in the LLCs at issue but refused to state why Arlin no longer had an interest in them or that the LLCs had been transferred to Denise over a year before. He stated only that Arlin "isn't going to have nothing." Matt also stated he had control over their mother's money and would "dictate what happens" with it and if people "want to be

whatever about it, then . . . nobody will get nothing." Matt stated Arlin would have a hard time proving the money was his.

Upon our de novo review of the record before us, we find Arlin proved by a preponderance of the evidence he was over the age of sixty and unable to protect himself from financial exploitation by Matt and Denise as a result of his depression following his wife's death. *See* Iowa Code § 235F.1(17). Accordingly, we affirm the district court's ruling ordering Matt and Denise to transfer 2811 Warford LLC, 222 State Street LLC, and 322 Carroll Street LLC to Arlin and to provide a complete accounting for each of these three LLCs, any copies pertaining to any rental agreements or deposits concerning the properties owned by the LLCs, and any documentation regarding any obligations or debts of the LLCs. We affirm the court's order restraining and enjoining Matt and Denise from taking any detrimental actions that may adversely impact the LLCs.

Arlin also requests appellate attorney fees. Iowa Code section 235F.6(7) provides the court "may order that the defendant pay the attorney fees and court costs of the vulnerable elder." Arlin contends chapter 235F does not limit an award of attorney fees to those incurred in the district court. Therefore, he claims, appellate attorney fees may be awarded. *See, e.g.*, *Schaffer v. Frank Moyer Constr., Inc.*, 628 N.W.2d 11, 23 (Iowa 2001) (concluding that because statute did not limit attorney fees to those incurred in district court it also contemplated the award of appellate attorney fees); *Bankers Trust Co. v. Woltz*, 326 N.W.2d 274, 278 (Iowa 1982) (holding that the right to attorney fees is statutory, and that a statute which justifies awarding attorney fees in the trial court also justifies awarding attorney fees in the appeal).

Because we are dismissing the cross-appeal in this case in order to give the district court an opportunity to bring to completion the interlocutory provisions of its prior order, we leave the issue of attorney fees for consideration and resolution by the district court.  *See Schaffer*, 628 N.W.2d at 23.

**APPEAL AFFIRMED; CROSS-APPEAL DISMISSED; AND REMANDED.**